[Civil No. 2847. Filed February 18, 1931.]

[296 Pac. 247.]

YOUNG MINES COMPANY, LTD., a Corporation, Appellant, v. CITIZENS' STATE BANK, a Corporation, and E. S. WAKELIN, Appellees.

522

Mr. J. E. Morrison and Messrs. Cunningham & Carson, for Appellant.

Messrs. Sloan, Holton, McKesson & Scott, for Appellees.

LOCKWOOD, J.—Young Mines Company, Ltd., a corporation, hereinafter called plaintiff, brought suit against Citizens' State Bank, a corporation, and E. S. Wakelin, hereinafter called defendants, to recover the sum of $5,768 for money had and received. Defendants by their answer set up the statute of limitations; that the money in question was retained under instructions from plaintiff, and an estoppel by subsequent conduct. The case was tried before a jury, which returned a verdict in favor of plaintiff for the amount sued for. After judgment was rendered on the verdict, defendants moved for a new trial, which motion was granted, the court specifying in the order that it was granted on the following grounds: (a) Because of errors of law occurring at the trial and during the progress of the case; (b) because the court erred in refusing to grant defendants' motion for an instructed verdict; (c) because the court erred in its instructions to the jury; and (d) because the verdict and the judgment of the court is not supported by

and is contrary to the evidence in the case. From this order granting a new trial as above set forth plaintiff has appealed.

A motion for a new trial is addressed to the sound discretion of the trial court, and if granted, every presumption is in favor of the action of such court. *Power* v. *Fairbanks,* 146 Cal. 611, 80 Pac. 1075; 4 C. J. 782, and note. Where an order granting a motion for a new trial is general in its terms, it will be affirmed if it could properly have been granted on any of the grounds assigned. *Huntsman* v. *First Nat. Bank,* 29 Ariz. 574, 243 Pac. 598. When, however, the court specifies in its order the precise reasons it was granted, we are necessarily confined to those reasons in passing upon the order. *Millar* v. *Madison Car Co.,* 130 Mo. 517, 31 S. W. 574; *Anderson* v. *Chrisman,* 37 Okl. 73, 130 Pac. 539.

We have examined the entire record carefully, and without going into details, are of the opinion that the trial court in entering its order did itself an injustice, so far as the first three grounds upon which the order is based are concerned. Nowhere in the record does it appear that the court erred during the trial and progress of the case in its rulings on questions of law. Every ruling in so far as we can determine was strictly proper. Nor did it err in refusing to grant defendants' motion for an instructed verdict. This motion was made at the close of plaintiff's case. The evidence at that time showed the receipt by defendants of money belonging to plaintiff, and that it had not been paid to the latter. This was sufficient to sustain a judgment for money had and received.

It is urged that there was an improper joinder of parties defendant, in that since they did not jointly receive the money in question, while an action would lie against either of them for money had and received, they could not be joined in the same action. We

think the rule claimed by defendants is the correct one. *Simmons* v. *Spencer,* (C. C.) 9 Fed. 581; *Denman* v. *Richardson,* (D. C.) 284 Fed. 592. The point, however, should have been raised either by special demurrer or by a plea in abatement, and if not so raised, it is deemed waived. Sections 3776, 3777, Rev. Code Arizona 1928. And an objection of this kind not raised by demurrer or answer cannot be urged for the first time on appeal. *Cooper* v. *Holder,* 24 Ariz. 415, 210 Pac. 690. It does not appear the matter was ever presented to the trial court, and we therefore decline to consider it here.

Nor did the court err, at least as against defendants, in its instructions to the jury. They were fully as favorable as the latter had any right to ask. The order cannot be sustained on any of the three grounds above discussed.

We come, then, to the last ground, which is that the verdict is not supported by and is contrary to the evidence in the case. The rule in regard to a conflict in the evidence is far different in the trial court from that in the appellate court. So far as this court is concerned, we will sustain a verdict of a jury, or the findings of the trial court, if any reasonable evidence can be found in the record to support them, and we will not consider the weight of the evidence or conflict thereon. *Leadville Mining Co.* v. *Hemphill,* 17 Ariz. 146, 149 Pac. 384; *City of Bisbee* v. *Thomas,* 24 Ariz. 614, 212 Pac. 190.

On the other hand, the trial court not only may, but must, on an assignment of this character, pass on the weight of the evidence and if, after a full consideration of the case, in its discretion it believes that the verdict was contrary to the weight of the evidence, and that substantial justice has not been done between the parties, it is its duty to set aside the verdict and grant a new trial. *Huntsman* v. *First Nat.*

*Bank, supra; Dennis* v. *Stukey, ante,* p. 299, 294 Pac. 276. In considering this ground assigned by the court for making its order, we must therefore resolve every conflict in the evidence in support of the order, just as we follow the same rule in support of a verdict or findings which are before us for review. *Pengilly* v. *Case Threshing Machine Co.,* 11 N. D. 249, 91 N. W. 63; *Thomas* v. *Illinois Cent. R. Co.,* 169 Iowa 337, 151 N. W. 387. With this rule for our guidance, we state the facts as disclosed by the evidence as follows:

Plaintiff was a corporation engaged in the mining business, whose affairs were, during its entire existence, managed almost exclusively by George U. Young, its general manager, and one of its board of directors. Apparently he handled its business as though it were his own private affair. The bank account of plaintiff was carried in his personal name, and he incurred indebtedness on its behalf at will, signing his own name to notes for the plaintiff's debts. In 1920 he had purchased some $4,200 worth of groceries for the use of the company from Brackett Mercantile Company, of Mesa, Arizona. The Mercantile Company was insisting upon payment of the indebtedness and plaintiff had no funds with which to pay it. Defendant Wakelin at that time was in the wholesale grocery business in Phoenix, and the Brackett Mercantile Company was heavily indebted to him. By a mutual agreement among the three parties concerned Young gave Wakelin his personal note for the amount due the Brackett Mercantile Company. The Mercantile Company then canceled the indebtedness of plaintiff to it, and Wakelin gave the mercantile company credit on its indebtedness to him in the sum as shown by the note. There is no suggestion in the record that this was plain-

tiff's note. On the contrary, Wakelin himself testified it was Young's personal obligation.

The matter remained dormant until the year 1925. At that time plaintiff was indebted to the bank in the sum of about $20,000, and the latter was insisting upon payment. A resolution was duly passed by plaintiff's directors, consisting of Young, his wife, and Wakelin, authorizing the execution. of a mortgage on all the property of plaintiff to secure a promissory note in the sum of $50,000. The note and mortgage were duly executed and delivered to the bank, and by it negotiated, and at the time Young wrote the bank as follows:

"I wish every cent due the bank be deducted also the amount of that check due Mr. Wakelin, also be deducted,—as I wish every cent paid—that I may know just where I am."

The bank made the deductions referred to in the letter, and also the amount of the $4,200 note plus $1,568 interest thereon, and sent a statement to Young showing the deductions and that the amount remaining out of the $50,000 realized on the note and mortgage was deposited in his personal name. Immediately thereafter Young wrote the bank, inquiring as to what the $4,200 deduction was for, and stating that he did not think he owed Wakelin anything except the check for $1,491.10. The bank evidently explained the matter, for a couple of days later Young again wrote the bank, protesting against the deduction of the Wakelin note at the time, but stating that he would take care of it later, and insisting that the amount taken out to pay the note be credited to his account. Wakelin wrote Young, detailing the circumstances under which the note was given, and insisting that the amount deducted could not be returned. Young protested again, but without avail, and some thirty days later wrote the bank, request-

ing that his canceled notes, including the Wakelin note, be given to Mrs. Young, which request was complied with. The matter remained quiescent until some two years and eight months later, when plaintiff brought this suit.

It is obvious from this statement of the facts that at no time did plaintiff, either through Young or otherwise, authorize a payment of the note in question from its funds. On the contrary, when it discovered that the amount had been deducted it protested repeatedly through Young, its general manager, against such deduction. There is no evidence to support the defense that the payment was authorized by plaintiff. The plea of the statute of limitations was obviously based on the theory that the suit was for the recovery of money converted, in which case the two-year statute (Rev. Code 1928, § 2059), would apply. We are of the opinion that the pleadings show the suit was based upon an action of debt for money had and received, and in such case the three-year statute (Rev. Code 1928, § 2060) would govern, and the plea was not good.

The third defense is that of estoppel. It is urged that plaintiff "made no objection or protest to said payment until long after the said payments were made, and therefore plaintiff is now estopped to question the payment of said note, or application of said funds and money." It will be noticed that the plea is not one of ratification, but of estoppel. The two rest upon entirely different theories. The general principles of equitable estoppel may be stated as follows: A person is held to a representation made or a position assumed where otherwise inequitable consequences would result to another, who, having the right to do so, under all the circumstances of the case, has in good faith relied thereon *and been misled to his injury.* 10 R. C. L., pp. 689, 697. A ratifica-

tion is the subsequent approval by a principal of a previous unauthorized act by one claiming to act as an agent, and in such case it is immaterial whether there had been an alteration in the position of the parties. To illustrate: B, who is A's agent, pays $5,000 to C without any actual or apparent authority to do so. A, subsequent to the payment, approves it. If A sues to recover the money from C, the latter may plead ratification, but cannot claim an estoppel on these facts alone.

The evidence as set forth above certainly lacks the final and decisive element of an estoppel. Defendants in no manner changed their position to their injury through reliance on any act of plaintiff. Nor is there anything in the evidence which would show a ratification of the unauthorized payment. On the contrary, it appears that plaintiff, through its proper officer, protested most vehemently against it.

The trial court, judging from its instructions, apparently was under the impression that because the original transaction out of which the note arose was an indebtedness of plaintiff, that it was equitably bound to pay the same, and that the instructions given to the bank that "I wish every cent due the bank be deducted" authorized its action. This theory, however, is erroneous for two reasons. In the first place, the testimony of Wakelin himself shows clearly a novation. There were originally two indebtednesses, one by plaintiff to the Brackett Mercantile Company, and the other by the latter to Wakelin. By mutual consent there was substituted for these two separate claims a personal obligation of Young to Wakelin. In the second place, at no time was the note an indebtedness to the bank. It was a personal matter of Wakelin's.

For the foregoing reasons the learned trial court erred in granting a new trial on the grounds stated in

its order, since its original actions in the trial of the case and in rendering judgment on the verdict of the jury were in all respects correct. The order granting a new trial is reversed, and the case remanded for further proceedings in accordance with this opinion.

McALISTER, C. J., and ROSS, J., concur.