Gast, Appellant, *v.* Petsinger et al.

Argued April 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James Victor Voss,* with him *Neely and Voss,* for appellant.

*Alan H. Finegold,* with him *Stephen M. Olson,* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellees at Nos. 68 and 113.

*Harry J. Gruener,* with him *Litman, Litman, Harris & Specter,* for appellees at No. 113.

OPINION BY HOFFMAN, J., June 21, 1974:

This appeal is from a summary judgment involving a contract dispute. Appellant charges in his Complaint that he was employed by LNG Services as a project engineer in 1968. For over a year, he was paid his agreed salary of $15,000.00 per year. From October of 1969 until March of 1971, when he severed his employment from the business, he continued in his capacity without pay. Upon tendering notice of termination of employment, appellant submitted a claim for back pay and expenses. This amount was never paid and a suit in assumpsit was thereupon instituted. The Complaint states that the business known as LNG Services is formally a limited partnership. The only named general partner is the defendant, Robert E. Petsinger. Nevertheless, appellant claims that the other named individual defendants, while ostensibly limited partners, were, by virtue of their participation in the enterprise, acting as general partners, and should therefore be liable for the monies due him. The appellees' Answers may be described as general denials of appellant's allegations. A copy of the Limited Partnership Agreement is annexed to each Answer showing the amount of capital investment of each appellee, and the status of each as a "limited partner". The New Matter alleges that no indicia of "control" were evident from the relationship of each partner to the business.

Plaintiff served written interrogatories on the defendants, and answers were submitted thereto. Following the oral deposition of the plaintiff at which demands were made for specific proof of involvement of any or all of the limited partners in the activity and operation of LNG Services, the appellees moved for summary judgment. Appellant did not answer these motions, but instead submitted an Affidavit saying that he was "prepared to prove at trial that the defendants jointly and severally took control of the partnership

business, acted as managers or managed the partnership business." Oral Argument was heard; thereafter, the Court entered an Order granting defendants' Motion of Summary Judgment. The plaintiff-appellant has appealed to this Court asserting that the Answers to Interrogatories and his own Deposition supported by documentary evidence establish certain involvement in the partnership by the named defendants that presents a factual dispute on the question of "control" which should be submitted to a jury.

We have examined the record in this case and find the following to be the degree and kind of participation of the Limited Partners in LNG Services:

1. All Limited Partners have the following rights and powers as described in the Limited Partnership Agreement:

(a) the right to receive distributions from time-to-time and upon dissolution;

(b) the right to prevent the transfer of assets and other acts "outside the ordinary business of the partnership" unless an aggregate of 50% in interest give written consent to the transfers or acts;

(c) the right to examine the books and records of the partnership at the principal office of the partnership;

(d) the right to attend meetings "for the purpose of receiving the report of the General Partner and for taking any action referred to . . ." in clause (b), *supra*;

(e) the right to transfer, sell or assign their interests to third parties;

(f) and, upon the death of a Limited Partner, to have his or her share of the profits and distributions inure to his or her Estate.

2. According to the Limited Partnership Agreement, "the management and control of the Partnership's day-to-day operation and maintenance of the

property of the Partnership shall rest exclusively with the General Partner." Consistent with statutes regulating limited partnerships, the Agreement places the "control" of the business in the hands of the General Partner. The Limited Partners, by virtue of their capital contributions, have the powers mentioned above, and are prohibited from taking any "part in the conduct or control of the Partnership and its business and shall have no right or authority to act for, or bind, the Partnership."

3. The following represents the proportionate shares and investments made by each of the limited partners to the partnership:

|  | assets | % interest |
|---|---|---|
| John J. McMullen Associates | license for natural gas improvement | 25% |
| J. Judson Brooks | $50,000.00 | 8-1/3% |
| John C. Oliver, Jr. | $50,000.00 | 8-1/3% |
| W. D. George, Jr. | $50,000.00 | 8-1/3% |
| Alexander M. Laughlin | $50,000.00 | 8-1/3% |
| J. Anthony Boalt | $50,000.00 | 8-1/3% |
| Dr. Leo Garwin | $16,666.66 | 2-7/9% |
| Charles E. Manning, Jr. | $16,666.66 | 2-7/9% |
| Joan M. Apt and Jerome Apt, Jr. | $16,666.66 | 2-7/9% |

The organization of LNG Services is in conformance with the Uniform Limited Partnership Act (59 P.S. §171 et seq.). The certificate is in good order, and the Agreement delineates the powers, rights and liabilities of the General and Limited Partners in express terms. None of the powers mentioned therein exceed the degree of "control" which converts the status of a limited partner to that of general partner. See, *Freedman et al. v. Philadelphia Tax Review Board*, 212 Pa. Superior Ct. 442, 243 A. 2d 130 (1968). In two sections of the

U.L.P.A., the statute clearly limits the liability of the limited partner: "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, *he takes part in the control of the business.*" 59 P.S. §191; also 59 P.S. §171.

In *Freedman, supra,* at 446, we defined the limited partnership as "an entity in which one or more persons, with unlimited liability, manage the partnership, while one or more other persons only contribute capital; these latter partners have no right to participate in the management and operation of the business and assume no liability beyond the capital contributed." Citing *Lichtyger v. Franchard Corporation,* 18 N.Y. 2d 528, 277 N.Y.S. 2d 377 (1966), we concluded that: "By adhering to this arrangement, the limited partner is exempted from general liability and places 'his capital alone at the peril of the business.' " 212 Pa. Superior Ct. at 447.

Each of the limited partners in the instant case contributed capital to the partnership and enjoyed certain powers and rights which have been recognized as consistent with the concept of a "limited partner". Each received reports and materials periodically concerning the Partnership sent by the General Partner. The record discloses that the limited partners McMullen Associates, Brooks, Oliver, Laughlin and Manning, also on occasion attended meetings of the partnership called by the General Partner between March and July 1969 for the purpose of reporting on the business of the partnership and amending the Agreement. In addition, the above-named partners (except for Laughlin) attended personal meetings between the General Partner and certain employees for the purpose of raising additional capital. Partners W. D. George and Joan M. Apt did no more than receive the aforementioned reports of the partnership.

Only Dr. Garwin and Jerome Apt, Jr., appear to have acted in capacities which require some discussion and evaluation. In addition to receiving reports and attending meetings wherein status reports and additional capital investments were discussed, Dr. Garwin was employed by the Partnership as an independent engineering consultant with respect to certain projects undertaken by LNG Services for which service he was retained by the General Partner and in which, he and the General Partner assert, he remained subject to the supervision and control of Petsinger, the General Partner. Apt was also engaged from time to time as an independent consultant on certain projects. These individuals were described as "Project Managers" on several booklets which were attached to appellant's deposition as exhibits.[1]

Accepting all the facts as asserted by the plaintiff as true, as we must do in determining the propriety of a summary judgment, we do not believe that, at least with respect to several of the appellees, this case so clearly was devoid of a single factual issue as to remove the matter from the deliberation of a jury. See, *Phaff v. Gerner,* 451 Pa. 146, 303 A. 2d 826 (1973); *Bader v. Highway Truck Drivers,* 214 Pa. Superior Ct. 123, 251 A. 2d 692 (1969).

The key issue before the lower court was whether the appellant had presented an arguable case demon-

---

[1] In his Brief, the Appellant says that he has numerous witnesses and documents to support his allegations that McMullen Associates, Garwin, Manning and Apt were acting as consultants and served as "Project Managers". There is nothing in the record presented to this Court to support any allegations of "control" with respect to managerial or consulting positions held by McMullen or Manning. We will not speculate by considering the possible truth of such proof if it were presented. The lower court entered its order on the basis of evidence that appears of record. We cannot find a single piece of evidence so linking any of the appellees, with the exceptions of Garwin and Apt.

strating that some or all of the appellees had "take[n] part in the control of the business." The question of "control" has not been squarely met in Pennsylvania. We are, however, guided by decisions in a number of jurisdictions following the U.L.P.A. which have construed the term in various factual contexts. One excellent Harvard Law Review article examining this problem identifies the problem and the important factors to consider. "Investing Partners want to limit their liability in connection with the enterprise. They will not participate in managing the partnership's ordinary investment activities . . . [h]owever, as a practical matter, it is unlikely that major commitments of capital would be made without informing and perhaps consulting with Investing Partners." Alan L. Feld, "The 'Control' Test for Limited Partnerships", 82 Harv. L.R. 1471, 1474.

State and federal courts have taken a similar view. The courts have held, without satisfactorily describing the standards by which to judge a limited partner's activities, that the following did not constitute taking part in the "control" of the business: acting as a foreman in the employ of the partnership, with the power to purchase parts as necessary without consulting the general partner, but without the power to extend credit without prior approval from the general partner or deal with the partnership account, *Silvola v. Rowlett*, 272 P. 2d 287 (Colo. 1954); acting as a member of the board of directors of the partnership (although the Court noted that he never did actually serve as such), *Rathke v. Griffith*, 218 P. 2d 757 (Wash. 1950); acting as sales manager in a new car sales department of the partnership without power to hire or fire, and, with power to order cars only with the general partner's approval, *Grainger v. Antoyan*, 313 P. 2d 848 (Calif. 1957); and, participating in the choice of key employees and giving a certain degree of "advice", *Plasteel Prod-*

*ucts Corporation v. Helman,* 271 F. 2d 354 (1st Cir. 1959).

An analysis of each of the cases reveals that they were decided on their own facts and are of little use in forming rules or standards. In each case, it was not the position of the limited partner that was stated as permissible, but the actual role and degree of participation that each had in relation to the general partner. A reading of those cases reinforces the belief of this Court that the determination must be made on an *ad hoc* basis, and while employment may not be conflicting with the status of a limited partner, the "control" that partner has in the day-to-day functions and operations of the business is the key question. Does the limited partner have decision-making authority that may not be checked or nullified by the general partner? As Alan Feld notes in his article: "[While] some cases would permit the limited partner to 'advise' the general partners . . . it is not at all clear that Investing Partners may do so without fear of liability in view of the weight their advice is likely to carry, both because of the size of their investments and because they are 'carrying' Managing Partners' interests. The determination of control is a factual one and this relationship may, as a practical matter, give any 'advice' the color of a command in the partnership." 81 Harv. L.R. 1471, 1477.

Here, the appellant testified that partners Apt and Garwin acted in the partnership as "Project Managers". He stated in his deposition that the appearance of their names on brochures and reports, the obvious weight their "advice" carried in their recommendations and report on key projects, and their managerial responsibilities, all contributed to a belief that they exercised "control". The defendant Petsinger, the General Partner, confirms the fact that these two individuals acted as independent "consultants" on various "projects". He

denies their authority or right to control the business decisions. His statement as defendant is conclusionary, and since we are reviewing this appeal on a summary judgment, the inference most favorable to the plaintiff must be made.

It may be true that once all the facts are in, the appellees, Apt and Garwin, will have been found not to have exercised the degree of "control" necessary to impose general liability upon them. We agree that the nature of the business of LNG Services, described as having as its purposes "the management of the development, engineering, and technical advice relating to the development or uses for liquified natural gas, etc., . . .", required the utilization of expert opinion of technical minds. It is not apparent from the face of the record that the technical skills and training of Apt and Garwin did not by virtue of their retention as "Project Managers" place them in a position where their "advice" did influence and perhaps, control the decisions of the General Partner, whose particular expertise is unknown.

With respect to the appellees, John J. McMullen Associates, Inc., J. Judson Brooks, John C. Oliver, Jr., W. D. George, Jr., Alexander M. Laughlin, Charles Manning, and Joan M. Apt, we affirm the order of the court below granting defendants' motion for summary judgment. None of the above-named partners is shown to have engaged in any activity or participated beyond those lawfully and expressly stated in the Limited Partnership Agreement. With respect to the appellees, Jerome Apt, Jr., and Dr. Leo Garwin, we reverse the order and judgment of the court below, and remand the case for further proceedings consistent with this opinion.

Orders affirmed in part, reversed in part.