822 P.2d 490

**GATEWAY POTATO SALES,
a Minnesota corporation,
Plaintiff–Appellant,**

**v.**

**G.B. INVESTMENT COMPANY, an
Arizona corporation, Defendant–
Crossclaimant–Appellee.**

**No. 1 CA–CV 90–025.**

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 12, 1991.

Case & Bennett by William F. Bennett, Scottsdale, for plaintiff-appellant.

Burch & Cracchiolo, P.A. by David M. Villadolid and Andrew Abraham, Phoenix, for defendant-crossclaimant-appellee.

## OPINION

TAYLOR, Judge.

Gateway Potato Sales (Gateway), a creditor of Sunworth Packing Limited Partner-ship (Sunworth Packing), brought suit to recover payment for goods it had supplied to the limited partnership. Gateway sought recovery from Sunworth Packing, from Sunworth Corporation as general partner, and from G.B. Investment Company (G.B. Investment) as a limited partner, pursuant to Arizona Revised Statutes Annotated (A.R.S.) § 29–319. Under § 29–319, a limited partner may become liable for the obligations of the limited partnership under certain circumstances in which the limited partner has taken part in the control of the business.

G.B. Investment moved for summary judgment, urging that there was no evidence that the circumstances described in A.R.S. § 29–319 had occurred in this case. It argued that, as a limited partner, it was not liable to the creditors of the limited partnership except to the extent of its investment. The trial court agreed, granting G.B. Investment's motion for summary judgment.

Gateway appeals from the judgment and the denial of its motion for reconsideration, arguing the existence of conflicting evidence of material facts relating to the participation of the limited partner in the control of the partnership business. We agree and reverse the grant of summary judgment.

## FACTS

On review from the trial court's order granting summary judgment, the facts are viewed in the light most favorable to the party against whom judgment is entered. *Dolezal v. Carbrey,* 161 Ariz. 365, 366, 778 P.2d 1261, 1262 (1989). Sunworth Corporation and G.B. Investment formed Sunworth Packing in November 1985 for the purpose of engaging in potato farming in Arizona. The limited partnership certificate and agreement of Sunworth Packing, filed with the office of the Arizona Secretary of State, specified Sunworth Corporation as the general partner and G.B. Investment Company as the limited partner. The agreement recited that the limited partner would not participate in the control of the business. The agreement further stated

that the limited partner would not become liable to the creditors of the partnership, except to the extent of its initial contribution and any liability it may incur with an Arizona bank as a signatory party or guarantor of a loan and/or line of credit.

In late 1985, Robert C. Ellsworth, the president of Sunworth Corporation, called Robert Pribula, the owner of Gateway, located in Minnesota, to see if Gateway would supply Sunworth Packing with seed potatoes. Pribula hesitated to supply the seed potatoes without receiving assurance of payment because Pribula was aware that Ellsworth had previously undergone bankruptcy. Pribula, however, decided to sell the seed potatoes to Sunworth Packing after being assured by Ellsworth that he was in partnership with a large financial institution, G.B. Investment Company, and that G.B. Investment was providing the financing, was actively involved in the operation of the business, and had approved the purchase of the seed potatoes. Thereafter, from February 1986 through April 1986, Gateway sold substantial quantities of seed potatoes to Sunworth Packing.

While supplying the seed potatoes, Pribula believed that he was doing business with a general partnership (i.e., Sunworth Packing Company, formed by Sunworth Corporation and G.B. Investment Company). The sales documents used by the parties specified "Sunworth Packing Company" as the name of the partnership. Pribula was neither aware of the true name of the partnership nor that it was a limited partnership.

All of Gateway's dealings were with Ellsworth. Pribula neither contacted G.B. Investment prior to selling the seed potatoes to the limited partnership nor did he otherwise attempt to verify any of the statements Ellsworth had made about G.B. Investment's involvement. The only direct contact between G.B. Investment and Gateway occurred some time after the sale of the seed potatoes. It is, however, disputed whether G.B. Investment ever provided any assurance of payment to Gateway.

G.B. Investment's vice-president, Darl Anderson, testified in his affidavit that G.B. Investment had exerted no control over the daily management and operation of the limited partnership, Sunworth Packing. This testimony was contradicted, however, by the affidavit testimony of Ellsworth which was presented by Gateway in opposing G.B. Investment's motion for summary judgment. According to Ellsworth, G.B. Investment's employees, Darl Anderson and Thomas McHolm, controlled the day-to-day affairs of the limited partnership and made Ellsworth account to them for nearly everything he did. This day-to-day contact included but was not limited to approval of most of the significant operational decisions and expenditures and the use and management of partnership funds without Ellsworth's involvement.[1]

---

1. Ellsworth described with some specificity the ways in which G.B. Investment's control was exerted:

 a. During the early months of the Partnership, Thomas McHolm and/or Darl Anderson were at the Partnership's offices on a daily basis directing the operation of the Partnership, and thereafter, they were at the Partnership's offices at least 2–3 times per week reviewing the operations of the business, directing changes in operations, and instructing me to make certain changes in operating the Partnership's affairs;

 b. G.B. Investment Company was solely responsible for obtaining a $150,000.00 line-of-credit loan for the Partnership with Valley National Bank of Arizona, and it also signed documents guaranteeing the repayment of the loan;

 c. As the President of the general partner, I was not permitted to make any significant independent business decisions concerning the operations of the Partnership, but was directed to have all business decisions approved with Darl Anderson and/or Thomas McHolm, or was directed to carry out decisions made by Darl Anderson and/or Thomas McHolm. For example, instead of using Partnership funds to pay certain creditors and suppliers, I was directed by Darl Anderson and/or Thomas McHolm to use the Partnership funds to purchase additional machinery and equipment;

 d. Prior to constructing improvements to the packaging facilities of the Partnership, Thomas McHolm and/or Darl Anderson had to approve all construction bids, individually selected some of the suppliers and subcontractors, and individually selected the equipment to be installed;

 e. Thomas McHolm and/or Darl Anderson dictated the accounting procedures to be fol-

Ellsworth testified further that he had described G.B. Investment's control of the business operation to Pribula. Pribula confirmed that Ellsworth had informed him that G.B. Investment's employees, McHolm and Anderson, were at the partnership's office on a frequent basis, that Ellsworth reported directly to them, that daily operations of the partnership were reviewed by representatives of G.B. Investment, and that Ellsworth had to get their approval before making certain business decisions.

## DISCUSSION

Gateway argues that sufficient questions of fact exist which preclude the granting of summary judgment in favor of G.B. Investment. We will affirm the trial court's grant of summary judgment if there is no genuine issue of material fact in dispute and the moving party is entitled to judg-

ment as a matter of law. *Orme School v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

Subsection (a) of A.R.S. § 29–319 sets forth the general rule that a limited partner who is not also a general partner is not liable for the obligations of the limited partnership.

[A] limited partner is not liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business. However, if the limited partner's participation in the control of the business is not substantially the same as the exercise of the powers of a general partner, he is liable only to persons who transact business with the limited partnership with actual knowledge of his participation in control.

lowed by the Partnership, reviewed the Partnership's books and accounts almost continually, dictated that the Partnership use the same accounting firm as that of G.B. Investment Company to do the Partnership accounting tasks, undertook the responsibility of having prepared all Partnership tax forms and returns, and I only signed tax returns after they had been prepared by G.B. Investment Company's accountants and reviewed by Darl Anderson or some other employee/agent of G.B. Investment Company;

f. During a great portion of the duration of the Partnership, Thomas McHolm and/or Darl Anderson oversaw the daily operations of the Partnership because I had to have all expenditures approved by Thomas McHolm and/or Darl Anderson and Darl Anderson had to approve and sign checks issued by the Partnership, including without limitation payroll checks and invoices for telephone charges, utilities, publications, interest payments, bank card charges, supplies, etc. Copies of a sampling of the invoices and the corresponding checks are attached hereto as Exhibit 2;

g. After it was decided to add a hydrocooler to the processing and packaging facilities of the Partnership, Thomas McHolm individually selected the refrigeration equipment and chose the contractor to install the refrigeration equipment on the hydrocooler, and even saw to it that G.B. Investment Company (not the Partnership) directly paid the contractor for all of his services;

h. Thomas McHolm insisted that the Partnership use a particular supplier, to-wit: Allied Packaging, to supply packaging materials to the Partnership, he further took an active

role in reviewing and modifying the art work for use on the packaging items, and personally approved the bid submitted for the art work;

i. At least on two separate occasions, approximately in August, 1986 and again in November, 1986, Darl Anderson caused sums of monies (approximately $8,000 and $7,000 respectively) to be withdrawn from the Partnership account (No. 2270–8018) with Valley National Bank without the prior knowledge or consent of myself, as the President of the general partner of the Partnership. These monies were paid directly to G.B. Investment, and the withdrawals caused other checks of the Partnership to be dishonored due to insufficient funds and left the Partnership without sufficient funds to meet its payroll obligations;

j. Darl Anderson and/or Thomas McHolm caused certain expenses of the Partnership to be paid directly by G.B. Investment Company, to-wit: refrigeration equipment; and

k. After the Partnership defaulted on its loan payments to Valley National Bank, a loan which had been guaranteed by G.B. Investment Company, Darl Anderson, without my knowledge or consent, instructed the Valley National Bank to proceed with declaring the loan to be in default and to pursue its remedies under its Security Agreement with the Partnership, to-wit: to sell the equipment and machinery that it held as collateral at a foreclosure auction. At the foreclosure auction held on March 3, 1987, by Valley National Bank, Darl Anderson, on behalf of G.B. Investment Company, bought the equipment and machinery previously owned by Sunworth Corporation.

Subsection (a) does not discuss the types of activities that might be undertaken by a limited partner which would amount to "control of the business." Subsection (b), however, does contain a listing of activities that are permissible for a limited partner to undertake without being deemed to be taking part in "control of the business."[2]

A limited partner does not participate in the control of the business within the meaning of subsection (a) solely by doing one or more of the following:

(1) Being a contractor for or an agent or employee of the limited partnership or of a general partner;

(2) Consulting with and advising a general partner with respect to the business of the limited partnership;

(3) Acting as surety for the limited partnership;

(4) Approving or disproving an amendment to the partnership agreement; or

(5) Voting on one or more of the following matters:

(i) The dissolution and winding up of the limited partnership;

(ii) The sale, exchange, lease, mortgage, pledge or other transfer of all or substantially all of the assets of the limited partnership other than in the ordinary course of its business;

(iii) The incurrence of indebtedness by the limited partnership other than in the ordinary course of its business;

(iv) A change in the nature of the business; or

(v) The removal of a general partner. In addition, subsection (c) of A.R.S. § 29–319 provides that "[t]he enumeration in subsection (b) does not mean that the possession or exercise of any other powers by a limited partner constitutes participation by him in the business of the limited partnership."

In responding to the motion for summary judgment, Gateway urged the trial court to find that Gateway had presented a fact question of G.B. Investment's liability to it under A.R.S. § 29–319(a). Gateway argued that the statute imposes liability on a limited partner whose participation in the control of the business is substantially the same as the exercised power of a general partner. Gateway further argued that even if the person transacting business with the limited partnership did not know of the limited partner's participation in control, there is liability. Alternatively, Gateway argued that the statute imposes liability when the powers exercised in controlling the business might fall short of being "substantially the same as the exercise of powers of a general partner," but the person transacting business with the limited partnership had actual knowledge of the participation in control. Gateway asserted that the evidence it was presenting in response to the motion for summary judgment raised issues of material fact as to whether either of these situations had occurred. If either had occurred, Gateway argued, it would be entitled to recover from the limited partner, G.B. Investment.

In granting G.B. Investment's motion for summary judgment, the trial court gave two reasons for concluding that G.B. Investment could not be found liable under A.R.S. § 29–319(a) as a matter of law. First, as we interpret the trial court's comments, it read the statute as having a threshold requirement—that is, under all circumstances, a creditor of the limited partnership must have contact with the limited partner in order to impose liability on the limited partner. The evidence before the trial court showed that Gateway merely relied upon the statements made by Ellsworth, president of the general partner, and that Gateway did not contact G.B. Investment prior to transacting business with the limited partnership. Based upon these facts, the trial court concluded that liability could not be imposed upon G.B. Investment. The trial court's minute entry states, in relevant part:

[I]t is undisputed that the plaintiff contracted with and sold seed potatoes to the limited partnership, without any di-

---

**2.** The drafters of the Revised Uniform Limited Partnership Act (RULPA) from which Arizona's statute is taken, refer to this listing as a "safe harbor." Revised Uniform Limited Partnership Act § 303 cmt., 6 U.L.A. 239 (Supp.1991).

rect contact with the movant. In other words, at the time the sale with the limited partnership was consummated and completed—plaintiff can not by the posture of the evidence—be said to have been a person who, while transacting business with the limited partnership, did so with actual knowledge of defendant G.B. Investment Company's participation in control with the limited partnership or its general partner.

Consequently, plaintiff fails to leap the first "hurdle"; and neither the court nor the trier-of-fact need review plaintiff's factual assertions regarding "safe harbor" excesses or violations, if any, under A.R.S. § 29–319(B). The only purported contact between plaintiff and defendant G.B. Investment Company occurred in the fall of 1986, well after the last of the seed potatoes were delivered by plaintiff to the limited partnership.

Notwithstanding the representations made by Robert C. Ellsworth, as the president of the general partner, Sunworth Corporation, regarding the movant, plaintiff admits it never directly contacted the movant, to inquire into or verify Ellsworth's authority to bind the movant by such representations.

The court finds, given the present record, that movant G.B. Investment has no liability to plaintiff arising from movant being a limited partner in Sunworth Packing Limited Partnership.

■ After reaching this conclusion, the trial court also found that no specific facts had been presented which would support the application of A.R.S. § 29–319 so as to impose liability on G.B. Investment. As the minute entry states:

> The court further finds that while the statutory protection extended to limited partners is not absolute, there are no specific facts included within the plaintiff's response, supporting statement of facts, and supporting affidavits, which would support the applicability of A.R.S. § 29–319(A) so as to impose liability in

favor of plaintiff and against the movant G.B. Investment.

To the extent that the trial court's ruling may have been based on a belief that a limited partner could never be liable under the statute unless the creditor had contact with the limited partner and learned directly from him of his participation and control of the business, we believe that ruling to be in error.

In A.R.S. § 29–319(a), the legislature stopped short of expressly stating that if the limited partner's participation in the control of the business is substantially the same as the exercise of the powers of a general partner, he is liable to persons who transact business with a limited partnership even though they have no knowledge of his participation and control. It has made this statement by implication, though, by stating to the opposite effect that "if the limited partner's participation in the control of the business is not substantially the same as the exercise of the powers of a general partner, he is liable only to persons who transact business with the limited partnership with actual knowledge of his participation in control." A.R.S. § 29–319(a).

We believe this interpretation is strengthened by an examination of the legislative history of Arizona's limited partnership statute. It is further strengthened by the legislature's refusal to modify this statute to correspond to the Revised Uniform Limited Partnership Act, as amended in 1985. Prior to 1982, Arizona's limited partnership statute was patterned after the Uniform Limited Partnership Act (ULPA), which was drafted in 1916. Section 7 of the ULPA provided that "[a] limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." Uniform Limited Partnership Act § 7, 6 U.L.A. 559 (1969).[3]

---

**3.** The language of Arizona's then § 29–307 was taken verbatim from section 7 of the ULPA. For the text of Arizona's Uniform Limited Partnership Act, since repealed, see Uniform Limit-

ed Partnership Act, 1943 Ariz.Sess.Laws 124, *reprinted in* A.R.S. §§ 29–301 to –366 app. (1989) (as amended).

The Revised Uniform Limited Partnership Act (RULPA) was drafted in 1976. Revised Uniform Limited Partnership Act, 6 U.L.A. 239, 240 (Supp.1991). In 1982, the Arizona legislature adopted the RULPA after repealing its enactment of the ULPA. *See* 1982 Ariz.Sess.Laws, ch. 192, § 1 (effective July 24, 1982). Presently, A.R.S. § 29–319(a), dealing with a limited partner's liability to third parties, is very similar to the 1976 version of section 303(a) of the RULPA which stated:

> Except as provided in subsection (d), a limited partner is not liable for the obligations of a limited partnership unless he is also a general partner or, and in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business. However, if the limited partner's participation in the control of the business is not substantially the same as the exercise of the powers of a general partner, he is liable only to persons who transact business with the limited partnership with actual knowledge of his participation in control.

Revised Uniform Limited Partnership Act § 303(a), 6 U.L.A. 239, 325 (Supp.1991). The drafters' comment to section 303 explained that limited partners exercising all of the powers of a general partner would not escape liability by avoiding direct dealings with third parties. The comment stated:

> Section 303 makes several important changes in Section 7 of the prior uniform law. The first sentence of Section 303(a) carries over the basic test from former Section 7 whether the limited partner "takes part in the control of the business" in order to ensure that judicial decisions under the prior uniform law remain applicable to the extent not expressly changed. The second sentence of Section 303(a) reflects a wholly new concept. Because of the difficulty of determining when the "control" line has been overstepped, it was thought it unfair to impose general partner's liability on a limited partner except to the extent that a third party had knowledge of his participation in control of the business. On the other hand, in order to avoid

permitting a limited partner to exercise all of the powers of a general partner while avoiding any direct dealings with third parties, the "is not substantially the same as" test was introduced....

*Id.* at 326 cmt.

In 1985, the drafters of the RULPA backtracked from the position taken in section 303(a) of the 1976 Act. The new amendments reflect a reluctance to hold a limited partner liable if the limited partner had no direct contact with the creditor. The 1985 revised RULPA section 303(a) was amended to provide as follows:

> Except as provided in Subsection (d), a limited partner is not liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he participates in the control of the business. *However, if the limited partner participates in the control of the business, he is liable only to persons who transact business with the limited partnership reasonably believing, based upon the limited partner's conduct, that the limited partner is a general partner.*

*Id.* at 325 (emphasis added). The comment to section 303 was also revised to explain the reason for the amendment. The revised comment states:

> Section 303 makes several important changes in Section 7 of the 1916 Act. The first sentence of Section 303(a) differs from the text of Section 7 of the 1916 Act in that it speaks of participating (rather than taking part) in the control of the business; this was done for the sake of consistency with the second sentence of Section 303(a), not to change the meaning of the text. It is intended that judicial decisions interpreting the phrase "takes part in the control of the business" under the prior uniform law will remain applicable to the extent that a different result is not called for by other provisions of Section 303 and other provisions of the Act. The second sentence of Section 303(a) reflects a wholly new concept in the 1976 Act that has been further modified in the 1985 Act. *It was*

**144**

*adopted* partly because of the difficulty of determining when the "control" line has been overstepped, but *also (and more importantly) because of a determination that it is not sound public policy to hold a limited partner who is not also a general partner liable for the obligations of the partnership except to persons who have done business with the limited partnership reasonably believing, based on the limited partner's conduct, that he is a general partner.*
. . .

*Id.* at 326 cmt. (emphasis added).

The Arizona legislature, however, has not revised A.R.S. § 29–319(a) to correspond to the section 303 amendments. The Arizona statute continues to impose liability on a limited partner whenever the "substantially the same as" test is met, even though the creditor has no knowledge of the limited partner's control. It follows then that no contact between the creditor and the limited partner is required to impose liability.

■ Moreover, whereas section 303 of the RULPA states that the creditor's reasonable belief must be "based upon the limited partner's conduct," under A.R.S. § 29–319 the only requirement is that the creditor has had "actual knowledge of [the limited partner's] participation in control." The statute does not state that this knowledge must be based upon the limited partner's conduct. The comments to the original version of section 303 of the RULPA, from which Arizona's statute is taken, make it clear that only when the "substantially the same as" test is met is direct contact not a requirement. Conversely, if the "substantially the same as" test is not met, direct contact is required. Under the facts presented in this case, Gateway had no direct contact with G.B. Investment until after the sales were concluded. We conclude, therefore, that G.B. Investment would be liable only if the "substantially the same as" test was met.

■ Whether a limited partner has exercised the degree of control that will make him liable to a creditor has always been a factual question. This is so regardless of whether the particular statute involved is patterned after section 7 of the ULPA or after section 303 of the RULPA. *E.g., Alzado v. Blinder, Robinson & Co.,* 752 P.2d 544 (Colo.1988); *Gast v. Petsinger,* 228 Pa.Super. 394, 323 A.2d 371 (1974); *Holzman v. DeEscamilla,* 86 Cal.App.2d 858, 195 P.2d 833 (1948). Our current Arizona statute lists activities that a limited partner may undertake without participating in controlling the business. It also states that other activities may be excluded from the definition of such control. Where activities do not fall within the "safe harbor" of A.R.S. § 29–319(b), it is necessary for a trier-of-fact to determine whether such activities amount to "control." In the absence of actual knowledge of the limited partner's participation in the control of the partnership business, there must be evidence from which a trier-of-fact might find not only control, but control that is "substantially the same as the exercise of powers of a general partner."

■ We conclude that the evidence Gateway presented in this case should have allowed it to withstand summary judgment. The affidavit testimony of Ellsworth raises the issue whether he was merely a puppet for the limited partner, G.B. Investment. While a few of the activities Ellsworth listed may have fallen within the protected areas listed in A.R.S. § 29–319(b), others did not. Ellsworth's detailed statement raises substantial issues of material facts.

Viewing the facts in the light most favorable to Gateway, we cannot say as a matter of law that G.B. Investment was entitled to summary judgment. We conclude that Gateway is entitled to a determination by trial of the extent of control exercised by G.B. Investment over Sunworth Packing.

For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.

EHRLICH, P.J., and CLABORNE, J., concur.