895 P.2d 125

**ALL–WAY LEASING, INC., a California corporation, Plaintiff–Appellant,**

v.

**Kerry KELLY and Lorraine Kelly, husband and wife, Defendants– Appellees.**

**No. 1 CA–CV 92–0150.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 29, 1994.

Review Denied May 23, 1995.

Teilborg, Sanders & Parks, P.C. by J. Clayton Berger, Phoenix, for plaintiff-appellant.

Linzer, Lang & Ditsch, P.C. by Kent A. Lang and Brian E. Ditsch, Phoenix, for defendants-appellees.

## OPINION

FIDEL, Judge.

To bind a marital community to a lease of real property for a year or more, joinder of both spouses is required. Ariz.Rev.Stat.Ann. ("A.R.S.") § 25–214(C)(1) (1991). This case concerns an allegation that a spouse who did not join in her husband's lease of property from another ratified and bound herself to that transaction by actions taken in support of her husband's sublease to another. The trial court, finding no ratification, entered partial summary judgment relieving the wife and the marital community of liability on the lease the husband signed alone. For reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We state the facts in the light that favors the opponent of summary judgment. *Gateway Potato Sales v. G.B. Inv. Co.*, 170 Ariz. 137, 138, 822 P.2d 490, 491 (App.1991). A genuine issue of fact exists, and summary judgment is improper if a reasonable factfinder, given the evidence, could find for either party. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

This case involves a chain of commercial subleases, which we will number chronologically for ease of reference. The first lease was from Maryland Investments, Inc., the owner, to Camelback Imports, Inc. ("Lease 1"). Camelback subleased the property to BIMM, which subsequently merged with Appellant All–Way Leasing, Inc. ("Lease 2"). All–Way subleased the property to Appellee Kerry Kelly in January of 1988 ("Lease 3"). Appellee Lorraine Kelly, Kerry Kelly's wife, was not a signatory to Lease 3. To the contrary, Lease 3 designated its sublessee as "Kerry Kelly, an individual."

Lease 3 was to expire in October of 1988, but prior to expiration, All–Way and Kerry Kelly entered an agreement to extend it for five years ("Extended Lease 3"). As part of this transaction, All–Way replaced Camelback Imports as the first position lessee. Lorraine Kelly was not a signatory to Extended Lease 3.

In June of 1989, Kerry Kelly subleased the property to RAO, Inc. ("Lease 4"), again with no participation by his wife. In June of 1989, however, to secure the owner's approval of Lease 4, both Kerry *and* Lorraine Kelly entered an agreement ("Approval Agreement") with Maryland and RAO. Maryland approved Lease 4, and in exchange, the Kellys agreed to be liable to Maryland if RAO failed to honor its Lease 4 obligations. All–Way, Kerry Kelly's sublessor, was not a party to the Kellys' Approval Agreement with Maryland.

RAO stopped paying rent in June of 1991 and ultimately went bankrupt. When Kerry Kelly failed to cure the arrearage, All–Way brought this suit against Kerry and Lorraine Kelly, individually and as a marital communi-

ty, seeking damages for breach of the lease and seeking indemnity for All–Way's obligation to Maryland.

In cross motions for summary judgment, the parties disputed whether Lorraine Kelly and the Kelly marital community were liable to All–Way. When the trial court denied All–Way's cross-motion, granted the Kellys' motion, and dismissed All–Way's complaint as to Mrs. Kelly and the marital community, All–Way brought this timely appeal.

## DISCUSSION

All–Way challenges summary judgment on several grounds. First it argues that, because the initial term of Lease 3 was shorter than one year, joinder was not required to bind the community. Second, it argues that Mrs. Kelly joined in Extended Lease 3 by ratification. Third, it argues that Mrs. Kelly is estopped from denying joinder. Fourth, it argues that, even if breach of lease claims were properly dismissed, the trial court erred by dismissing its indemnity claims. All–Way also appeals the trial court's award of attorneys' fees to the Kellys.

### 1. The Need for Joinder

■ Although in most transactions either spouse alone may bind a marital community, "joinder" of both spouses is statutorily required to bind the community in certain transactions, including leases of one year or more. A.R.S. § 25–214(C).[1]

Because Lease 3 was initially for a term of less than one year, All–Way makes a perfunctory argument that summary judgment should have been denied. All–Way's claim does not arise, however, under Lease 3 but rather under Extended Lease 3, which Kerry Kelly entered for a five year term beginning in October of 1988. And as All–Way correctly concedes, to bind a marital community to a five year lease extension, joinder of both spouses is required. *Id.* All–Way therefore must prove joinder in this case.

### 2. Joinder by Ratification

All–Way next argues that, although Lorraine Kelly did not initially execute Extended Lease 3, she joined in that lease by ratification when she later signed the Approval Agreement with Maryland to secure Maryland's approval of Lease 4.

■ All–Way is correct that joinder may be accomplished through ratification. *Kimball v. Statler,* 20 Ariz. 81, 82–83, 176 P. 843, 844 (1918). A person not bound by a contract may ratify the contract and thus become bound by its terms, by affirming the contract through words or deeds. *Young Mines Co. v. Citizens' State Bank,* 37 Ariz. 521, 528–29, 296 P. 247, 250 (1931); Restatement (Second) of Contracts § 380 (1981); Restatement (Second) of Agency § 82 (1958). We will infer an intent to ratify if a non-party to the contract voluntarily accepts benefits conferred by the contract. *See Hubbard v. Geare,* 77 Ariz. 262, 264, 269 P.2d 1064, 1065 (1954); *Hartman v. Oatman Gold Mining & Milling Co.,* 22 Ariz. 476, 479–80, 198 P. 717, 719 (1921).

■ We must, however, be cautious when applying the general law of ratification to cases arising under A.R.S. § 25–214(C), which is intended to protect the marital community. The statute draws a bright and readily understandable line: one who wishes to bind a marital community in a statutorily designated transaction must get both spouses to sign. The statute was enacted to assure that in such transactions, the marital community will be bound "only by consent of the community." *Geronimo Hotel & Lodge v. Putzi,* 151 Ariz. 477, 480, 728 P.2d 1227, 1230 (1986). This clear policy would be circumvented, and the bright line of required joinder blurred, if the courts too readily permitted ratification to be inferred. Thus, for example, we have held that a non-signatory spouse's ratification of a statutorily designat-

---

1. A.R.S. § 25–214 provides in pertinent part:
   C. Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:

   1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year.

ed transaction cannot be inferred merely from the marital community's receipt of benefits under that transaction. *Consolidated Roofing & Supply Co. v. Grimm,* 140 Ariz. 452, 458, 682 P.2d 457, 463 (App.1984); *accord First Interstate v. Tatum and Bell Ctr. Assocs.,* 170 Ariz. 99, 104, 821 P.2d 1384, 1389 (App.1991). On the other hand, spouses could unfairly manipulate community immunity if the statute were interpreted to bar ratification altogether. Thus, in *Kimball,* the supreme court found that a nonsigning spouse had ratified a contract for exchange of farms when she joined her husband in signing a deed conveying their farm pursuant to the contract. 20 Ariz. at 82–83, 176 P. at 844; *see also Geronimo,* 151 Ariz. at 480, 728 P.2d at 1230 (dictum) (stating that a nonsigning spouse can "validate a lease by accepting payment or otherwise consenting to the agreement").

■ We return to the specifics of this case to determine whether a ratification consistent with the statute is inferable here. The Approval Agreement contains no express declaration that Lorraine Kelly intended to ratify Extended Lease 3. Nor does All–Way contend that there is any evidence other than the Approval Agreement to suggest that she explicitly or implicitly ratified that lease by word or deed. All–Way argues that the Approval Agreement supports an inference of ratification, however, by emphasizing one definitional provision that denominates "Kerry Kelly and Lorraine Kelly, husband and wife," as "Sub–Sublessor," and a subsequent section of historical recital in which the Approval Agreement describes the parties to Lease 3 and Extended Lease 3 as All–Way and "Sub–Sublessor." Because by this shorthand the Approval Agreement identifies Lorraine Kelly as a party to Extended Lease 3 and because Lorraine Kelly signed the Approval Agreement, All–Way argues that a jury could reasonably infer her ratification of, and willingness to be bound by, the obligations of Extended Lease 3.

We disagree. This argument would be persuasive if All–Way were a party to the Approval Agreement and if Mrs. Kelly had therein assumed an obligation to All–Way in order to secure *its* approval of Lease 4 to

RAO. All–Way, however, was not a party to the Approval Agreement. Nor has All–Way produced evidence to suggest that its approval of Lease 4 was sought or required. In the Approval Agreement, in return for consideration provided by Maryland—its approval of Lease 4—Mrs. Kelly bound herself and her marital community to Maryland. But there is no basis in the agreement for an inference that she intended simultaneously and gratuitously to bind herself and her community to All–Way as well. Because there was thus no manifestation of an intention to be bound to All–Way, we conclude that the Approval Agreement does not support All–Way's claim of joinder by ratification in this case.

### 3. Estoppel

■ All–Way alternatively claims that Mrs. Kelly and the marital community should be estopped from disaffirming Extended Sublease 3. All–Way argues, "where a wife acquiesces in her husband's management of their community business, has a general knowledge of the transaction which she seeks to disaffirm and is willing to accept the benefits of the transaction, the wife is estopped from disaffirming the transaction."

This proposition, if broadly accepted, could erase the bright line of A.R.S. § 25–214(C) and require a jury trial in almost every one-spouse-signature case. We need not determine here, however, how best to accommodate the statute to the equitable doctrine of estoppel. It suffices instead to observe that All–Way has overlooked essential elements of estoppel in this case.

Our supreme court has stated that the doctrine of equitable estoppel applies:

when the conduct of a party absolutely precludes the party from asserting rights which might have otherwise existed against another person who in good faith has relied upon the conduct and as a result of such reliance has changed his position for the worse.

*Heltzel v. Mecham Pontiac,* 152 Ariz. 58, 60, 730 P.2d 235, 237 (1987).

All–Way has introduced no facts that would permit the inference that any conduct of Lorraine Kelly led All–Way to rely on the

Kelly marital community's participation in Extended Lease 3. Indeed, All–Way has introduced no facts that would permit the inference that acts of either of the Kellys could have reasonably prompted such reliance. What facts there are support instead the inference that All–Way did not concern itself with community participation until the time came to pursue Kerry Kelly for default. All–Way entered Lease 3 with "Kerry Kelly, *an individual.*" (Emphasis added.) When the time came to extend that lease, it again dealt with Kerry Kelly alone. In short, because the element of reliance is wholly lacking in this case, the issue of estoppel need not further be explored.

### 4. Dismissal of the Indemnity Claims

■ In addition to requesting damages for breach of lease, All–Way sought to require Lorraine Kelly and the marital community to indemnify All–Way for any liability to Maryland. All–Way argues that the trial court erroneously dismissed its indemnity claims because the Kellys' motion for summary judgment did not address those claims.

All–Way is mistaken. The Kellys sought summary judgment on the ground that "the Kellys' marital community cannot be held liable *for any debts or obligations* to plaintiff." (Emphasis added.) This language was sufficient to put All–Way's indemnity claims at issue.

■ All–Way also argues that the trial court erred on the merits of its indemnity claims. Because contracts of indemnity are not among the agreements for which section 25–214 requires joinder, All–Way argues that Kerry Kelly's signature sufficed to bind the marital community to the indemnity requirements of Extended Lease 3, even if it did not suffice to bind the community to pay the rental obligations of the lease.

Again we disagree. Because Extended Lease 3 is not a part of the record, it is not clear what indemnity obligations it imposed.[2] But whatever indemnity obligations the lease may have imposed, they arose, like the obli-

gation to pay rent, from a lease of real property for more than one year. Because the wife did not join or ratify that agreement, she was exempt from all of its obligations— from its indemnity obligations no less than its obligation to pay rent.

All–Way also argues that, wholly apart from the indemnity provisions of the lease, as a tenant who had cured a sublessee's default, it had a common law cause of action to recover from the sublessee. We assume the validity of this proposition, but it does not aid All–Way's appeal. Pursuant to section 25–214, All–Way's sublessee was Kerry Kelly, not the Kelly marital community, and All–Way's indemnity claims against Kerry Kelly were not dismissed.

### 5. Attorneys' Fees

■ Finally, All–Way argues that, because its claims are meritorious and novel, the trial court erred in granting the Kellys' request for attorneys' fees pursuant to A.R.S. § 12–341.01(A) (1992).

■ Section 12–341.01(A) gives the trial court discretion to "award the successful party reasonable attorney's fees" in contract actions. Merit and novelty are among the factors the trial court may consider in exercising its discretion. *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

We find no abuse of discretion here. All–Way's legal position in this lawsuit, though colorable, is not of such merit, in our judgment, as to warrant the concern that a fee award will discourage other litigants from advancing tenable, novel claims. *Id.* To the contrary, we conclude that, by suing the Kelly marital community, All–Way undertook a calculated commercial risk. Because All–Way had subleased property only to "Kerry Kelly, an individual" and had never undertaken to secure Lorraine Kelly's participation in the lease, it should have recognized from a reading of A.R.S. § 25–214(C)(1) that the likelihood of losing against the marital com-

---

**2.** The parties stipulated for purposes of their cross-motions for summary judgment that Lorraine Kelly did not sign Extended Lease 3. Their stipulation did not address the indemnity provi-

sions of the lease. Lease 3, however, is in evidence, and it does contain an indemnity undertaking by the sublessee, namely, "Kerry Kelly, an individual."

munity was high. All–Way also should have recognized from a reading of A.R.S. § 12–341.01(A) that, in the event of a loss, the risk of paying its opponents' attorney's fees was high. Indeed, one purpose of section 12–341.01(A) is to encourage litigants in contract actions to consider such risks before filing suit. We therefore affirm the trial court's fee award pursuant to section 341.01(A), and we award appellees their reasonable attorney's fees on appeal.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed, and appellees are awarded appellate attorney's fees and taxable costs in an amount to be determined pursuant to Arizona Rules of Civil Appellate Procedure 21.

JACOBSON, P.J., and NOYES, J., concur.