706 P.2d 400

**CUSTOM ROOFING CO., INC., an Arizona corporation, Plaintiff-Appellee, Cross-Appellant,**

**v.**

**Robert ALLING; Owens-Corning Fiberglas Corporation, a Delaware corporation, Defendants-Appellants, Cross-Appellees.**

**No. 1 CA–CIV 7238.**

Court of Appeals of Arizona, Division 1.

July 9, 1985.

Law Offices of Hubert E. Kelly, P.C. by Hubert E. Kelly, Phoenix, for plaintiff-appellee, cross-appellant.

Ryley, Carlock & Ralston by Raymond M. Hunter, and David J. Hamilton, Phoenix, for defendants-appellants, cross-appellees Robert Alling and Owens-Corning Fiberglas Corp.

## OPINION

LIVERMORE, Judge.

Plaintiff, Custom Roofing Co. (Custom), entered into a subcontract to provide roofing on a school construction job specifying the use of materials from defendant, Owens-Corning Fiberglas Corp. (OC). OC had two offices in Phoenix, Branch and Supply. Branch sold exclusively to approved roofing contractors. Custom was not an approved contractor. Custom, however, had bought OC materials from Supply for many years. Custom sought quotes for materials from Supply and then placed an order with Supply. Supply ordered materials to fill this order from an OC factory and arranged a shipping schedule. OC sent a preliminary notice of lien to the school and to the general contractor. Thereafter, at the direction of defendant, Robert Alling, an employee of Branch, those orders were cancelled. Custom, because of its inability to obtain the necessary materials, lost its contract. It brought suit for breach of contract and tortious interference with contract. The jury found in its favor, awarding $35,000 compensatory and $105,000 punitive damages. Remittitur reduced the compensatory award to $14,144. OC appeals from the judgment and Custom cross-appeals from the remittitur and from the refusal to allow prejudgment interest.

OC contends first that it did not accept the Custom order so that no binding contract was formed. It further argues that if such a contract was created, it is

unenforceable for failure to comply with the statute of frauds. While an express acceptance obviously creates a contract, acceptance can be implied by unambiguous "language or circumstance," A.R.S. § 44–2313, now renumbered as § 47–2206. See *Cook v. Cook*, 142 Ariz. 573, 691 P.2d 664 (1984). There is ample evidence of acceptance by OC Supply of Custom's order. The order was prepared in response to price quotations prepared by Supply and was picked up at Custom's office by agents of Supply. Delivery schedules were discussed. In the context of the long-standing business relationship between Custom and Supply, it is hard to imagine circumstantial evidence more strongly probative of acceptance. Ordinary people do not speak "legalese." They do business. Their conduct implies the legal conclusion. On this record, there is no question that the agents of Supply believed they had accepted Custom's order, indeed they admitted it, and that such acceptance was conveyed to Custom by the actions of those agents. See A.R.S. § 44–2314(C), now renumbered as § 47–2207(C). Alternatively, these facts could as easily be construed as an offer by the price quotation of Supply which was accepted by Custom's purchase order.

■ The requirements of the statute of frauds, A.R.S. § 44–2308, now renumbered as § 47–2201, are met by the following facts:

(1) The failure to object to the written purchase order confirming an oral understanding of the prior day. A.R.S. § 44–2308(B);

(2) The internal memoranda of OC ordering the goods to fill the Custom order, conduct clearly evincing a belief in a contractual obligation;

(3) The filing of a preliminary notice of lien by OC in approximately the amount of the purchase order; and

(4) The testimony at trial of agents of Supply that they had accepted the order. A.R.S. § 44–2308(C)(2).

■ OC concedes that if its contract with Custom is valid, as we have determined, it is liable for tortious interference with the contract between Custom and the general contractor on the school job. It contends, however, that its employee, Alling, because he was acting in the scope of his employment cannot be independently liable for his acts of interference. We know of no general rule insulating employee tortfeasors from liability. The cases cited to us, *Petroni v. Board of Regents*, 115 Ariz. 562, 566 P.2d 1038 (App.1977), *Perry v. Apache Junction Elementary School District. No. 43*, 20 Ariz.App. 561, 514 P.2d 514 (1973), and *Wise v. Southern Pacific Co.*, 223 Cal. App.2d 50, 35 Cal.Rptr. 652 (1963), hold only that an employee cannot be held liable for inducing his corporate employer's breach. This rule makes sense; otherwise, every breach of contract would also involve, because a corporation can act only through its employees, an inducing to breach by the agent who caused the breach to occur. But that rule does not provide that an employee may induce the termination of a contract between third parties and be free of liability if motivated by a desire to benefit his employer. No reason has been advanced to support such a novel proposition and we discern none.

■ OC next argues that the evidence is insufficient to support a punitive damage award because the conduct of Alling was neither motivated by ill will toward Custom nor wanton, willful or in reckless disregard for the rights of others. See *Schmidt v. American Leaseco*, 139 Ariz. 509, 679 P.2d 532 (App.1983). The evidence demonstrates that Alling was motivated by a desire to limit the installation of OC roofing material to those contractors approved by OC, that he acted to prevent Custom from getting the necessary materials, and that he knew that his actions would cause Custom to lose its contract. His knowledge could lead to an inference of his intent to achieve that result. This demonstrates malice, wanton conduct, and indifference to the rights of others. It is not necessary to show that Alling derived positive joy from the harm he inflicted.

■ Finally, OC argues that the trial court erred in the admission of an OC document in which an employee was critical of the business practice of Alling, exemplified in part by this case, of limiting the sale of roofing materials to approved contractors. As an admission and business record of OC, it is, if relevant, admissible both against OC and Alling. That OC employees believed Alling's practices to be wrongheaded is relevant to whether punitive damages were appropriate. That legitimate business interests were served by the tortious act might make punishment less appropriate. As legitimacy diminishes, so does need and hence wantonness rises. In addition, the exhibit speaks to cancellation of orders and thus is probative of the existence of the contract allegedly breached. The exhibit was properly admitted. ·

■ With respect to the remittitur issue on cross-appeal, the parties are agreed that $14,144 is proved. The difference between that and the jury award of $35,000 depends on the testimony of an officer of Custom that had OC products been used at a higher cost than those anticipated in Custom's bid, Custom would have expected to be reimbursed by the general contractor. The general contractor's testimony, however, was that while negotiations might occur there was no agreement as to what, if any, adjustment might be made. On these facts, that Custom would have earned more is wholly speculative, *Rancho Pescado, Inc. v. Northwestern Mutual Life Ins. Co.,* 140 Ariz. 174, 680 P.2d 1235 (App.1984), and the trial court did not abuse its discretion in remitting the damages to the amount actually proved. *Spur Feeding Co. v. Fernandez,* 106 Ariz. 143, 472 P.2d 12 (1970).

■ The trial court also acted properly in rejecting Custom's claim for prejudgment interest. Such interest is appropriate only where the claim is liquidated, where the evidence furnishes "data, which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Banner Realty, Inc. v. Turek,* 113 Ariz. 62, 64–65, 546 P.2d 798, 800–801 (1976). What the profit will be on a construction contract, it seems to us, is necessarily a matter of opinion. Materials to be utilized can be computed with exactness; labor, however, is much less precise and is, at best, an estimate. Such estimates will sustain an award for damages but they do not reach the level of exactitude required for an award of prejudgment interest. Were the rule otherwise, any time damages were proved, prejudgment interest would have to be awarded.

The judgment is affirmed.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).

BIRDSALL, P.J., and FERNANDEZ, J., concur.