801 P.2d 426

MECHANICAL AIR ENGINEERING COMPANY, an Arizona corporation, Plaintiff–Appellee,

v.

TOTEM CONSTRUCTION COMPANY, an Arizona corporation, Defendant–Appellant.

No. 1 CA–CIV 9924.

Court of Appeals of Arizona, Division 1, Department D.

May 9, 1989.

Warner, Alvarez, McCarthy & Palmer by Donald R. Alvarez, Phoenix, for plaintiff-appellee.

Sternberg, Sternberg & Rubin by Ronald I. Rubin, Phoenix, for defendant-appellant.

## OPINION

GRANT, Chief Judge.

This appeal raises a question of first impression: whether a liquidated damage provision in a contract is enforceable only upon a showing of actual damages. The appeal is taken from a partial summary judgment on the liquidated damage issue, an arbitration award and an award of attorney's fees.

## FACTS

Totem Construction Company (Totem) was the general contractor on some remodeling and construction at Glendale Commu-

nity College. Mechanical Air Engineering Company (MAECO) was a subcontractor, furnishing labor and materials for heating, ventilating, air conditioning, sheet metal, and plumbing work. The parties agreed in paragraph 19 of their contract to damages in the amount of $350 for each day of MAECO's delay:

The SUBCONTRACTOR will cooperate with the CONTRACTOR and other SUB-CONTRACTORS whose work might interface with the SUBCONTRACTOR'S work and will participate in the coordination of such interface as required, specifically, noting and advising the CON-TRACTOR of any interference. The CONTRACTOR, however, will not be liable to the SUBCONTRACTOR for any delays in scheduling the work to be performed by the SUBCONTRACTOR, or any damages arising from such delays. SUBCONTRACTOR and CONTRACTOR agree that if the SUBCONTRACTOR fails to perform within the time specified on the progress schedule posted at the project site, that damages will occur to the CONTRACTOR but that such damages while capable of calculation are not capable of being specifically known at this time. Therefore in lieu of proof of such damages SUBCONTRACTOR and CONTRACTOR agree that a reasonable sum for such damages (and not as a penalty) is the sum of $350.00 per calendar days in excess of the time specifically and that such shall constitute liquidated damages agreed to.

MAECO sued Totem alleging that $16,000 was owed on its subcontracts and change orders. Totem counterclaimed, alleging that MAECO caused 46 days of delay and seeking $16,100 under the stipulated damage clause.

MAECO moved for summary judgment on the counterclaim, arguing that the damage clause was unenforceable because Totem suffered no actual loss as a result of any delay in completion of construction. In support of its motion, MAECO attached Totem's response to interrogatories indicating that Totem had been paid the general contract price on the project, $634,198 by Glendale Community College, and that no damages, back charges, or offsets had been assessed against Totem as a result of any construction delays.

Totem filed a cross-motion for summary judgment, arguing that it was immaterial whether it had been assessed any damage under its general contract. MAECO claims that Totem provided no evidence that it had incurred any actual loss as a result of MAECO's delay or that its actual loss was difficult to prove.

The trial court granted MAECO's motion for partial summary judgment because Totem failed to show any loss:

THE COURT: Gentlemen, I think that the way I understand the law, the liquidated damage provision is enforceable if there is some showing of damages. I don't see any.

I'm going to grant the motion of Maeco and deny the motion of Totem. I am setting it forth on the record on that specific issue. I may be wrong. I think there has to be some showing of some damage to trigger the concept that it would be difficult to assess the value of that damage.

The trial court entered judgment in favor of MAECO for $16,101.63. The trial court also awarded MAECO $10,000 of the $16,854.50 requested attorney's fees.

## ISSUES

Totem raises two arguments on appeal:

(1) That the liquidated damage clause was enforceable regardless of whether any evidence of actual loss was provided; and

(2) That Totem offered some evidence of actual loss.

## LIQUIDATED DAMAGE CLAUSE

We hold that a contract's liquidated damage clause is enforceable despite no showing of an amount of actual damage. We do so based on general contract principles and law interpreting liquidated damage clauses specifically.

First, it is a general principle of contract law that when parties bind themselves by a

lawful contract, a court must give effect to that contract as written if the terms are clear and unambiguous. *Estes Co. v. Aztec Const., Inc.*, 139 Ariz. 166, 168, 677 P.2d 939, 941 (App.1983). Paragraph 19 imposes no specific requirement that Totem show actual damages. On the other hand, MAECO argues that the clause does not say that no damages whatsoever need be shown.

Even though those specific words are not included, we cannot impose such a requirement on Totem. To require Totem to show an amount of actual damages would be to require Totem to do precisely what the parties agreed Totem need not do. Imposing such a requirement would not give effect to the contract's clear and unambiguous terms.

Second, we hold that the liquidated damage clause is reasonable even though it contains no requirement that the party enforcing the clause show actual damages.

When a court concludes that a liquidated damage clause is a penalty, it will refuse to enforce the clause as void and against public policy. Instead, it will limit recovery to the actual loss. However, when a court concludes that the clause is for liquidated damages, it will enforce the clause.

This distinction was developed by the courts of equity, which refused to enforce penal bonds. In order to coerce performance, a penal bond required the promisor to pay a stipulated amount upon breach. Later courts concluded that when actual loss could not be easily calculated, a liquidated damage clause was a valid alternative. *See generally* Comment, *Liquidated Damages: A Comparison of the Common Law and the Uniform Commercial Code*, 45 Fordham L.Rev. 1349, 1349–50 (1977). A liquidated damage clause serves a useful purpose when it would be difficult to prove the amount of loss with the degree of certainty required by law. 5 *Corbin on Contracts* § 1062 at 357–58, 361. A liquidated damage clause promotes enterprise by increasing certainty and by decreasing risk-exposure, proof problems, and litigation costs. *See* D. Dobbs, *Law of Remedies* § 12.5 at 823 (1973).

If a liquidated damage clause meets the following two conditions, Arizona courts will conclude that the clause is not a penalty and will enforce it:

(1) The liquidated amount must be a reasonable forecast of just compensation for the harm caused by a breach; and

(2) The harm caused by a breach must be one that is incapable or very difficult to accurately estimate.

*Larson–Hegstrom & Associates, Inc. v. Jeffries*, 145 Ariz. 329, 333, 701 P.2d 587, 591 (App.1985) (citing *Restatement (Second) of Contracts* § 356 and *Restatement of Contracts* § 339). Arizona courts have not analyzed whether a liquidated damage clause is reasonable when there is no proof of an actual loss.

As explained in illustration 7 to § 339(1) of the first Restatement, evidence that a delay caused no loss is immaterial to whether a stipulated damage clause is enforceable:

A offers to manufacture and deliver to the B Government specified guns at $5000 each if delivered by May 1, or at $4000 each if delivered 100 days later. B accepts the first offer at the higher price; but it is mutually agreed that in case of delay beyond May 1 the price to be paid shall be reduced by $10 for each day's delay. If the guns are not delivered until 30 days after May 1, B is bound to pay no more than $4700, since that sum is the agreed price. Evidence offered by A that the war is over and that the delay has caused no harm is wholly immaterial. . . .

### EVIDENCE OF ACTUAL DAMAGE

Totem argues that it did offer some evidence of loss caused by MAECO'S delay. This evidence was a reasonable forecast of just compensation for the harm caused by a breach. It is proof that there would be some damage from a breach without the burden of proof of an actual amount. Avoidance of this second burden is the benefit of a liquidated damage clause. Totem cites the affidavit of Thomas Nardini, president of Totem, who stated that it was

not possible to determine the amount of damages Totem would suffer:

Separate paragraph # 19 [, which included the stipulated damage clause,] was included in the subcontract agreements as, at the time of the execution of the subcontract, it was not possible to determine precisely the loss and damage Totem would suffer if the subcontractor failed to perform timely. The sum of $350.00 per day was included not as a penalty but as a reasonable estimate of actual loss or damage which Totem would suffer based upon estimated costs of keeping supervisory personnel on the job in the field and having to continue to administer the job contracts which, in Totem's experience, costs approximately $9,000.00—10,000.00 per month or $350.00 per day.

However, in opposing MAECO's motion for partial summary judgment, Totem argued that it was immaterial that Totem was not assessed liquidated damages under its general contract. During the hearing, the trial court told Totem's attorney that he had to offer evidence that Totem suffered some loss. Totem's attorney responded that enforcement of the stipulated damage clause did not require him to show any evidence of actual loss:

THE COURT: Before you can invoke the liquidated damages clause, you have got to show damages.

MR. RUBIN: I wish to point out that the contract has two liquidated damages provisions. One is Paragraph 13, I believe and 14. That covers a situation where Totem might have suffered actual damages—paragraph 13—as liquidated damages or otherwise, because of delay.[1] We are not invoking that provision. We are not claiming that we were assessed liquidated damages by the owner.

Nineteen [, which included the stipulated damage clause,] however, does not presuppose actual damages. Paragraph Nineteen is a separate paragraph and covers specifically the situation here.

Whether or not we suffer damages is not a prerequisite to enforcing the liquidated damages provision.

Totem offered further evidence that it claimed liquidated damages for delay in the form of a letter from Totem to MAECO dated March 8, 1984 and a telephone memorandum dated February 16, 1984 indicating Totem was invoking paragraph 19 of the contract.

We agree with Totem. The stipulated damage clause is enforceable. Totem showed sufficient evidence below to indicate that the clause was not imposed as a penalty but as payment for MAECO's delays. We do not believe that Totem was required, in addition to the reasonable forecast evidence referred to above, to show proof of actual damages resulting from MAECO's breach.

We reverse the grant of partial summary judgment in favor of MAECO and remand this case for further proceedings consistent with this opinion.

We grant Totem's request for attorney's fees in an amount to be determined upon its compliance with Rule 21(c), Rules of Civil Appellate Procedure.

CORCORAN and GREER, JJ., concur.

NOTE: The Honorable ROBERT J. COR-CORAN, Justice of the Arizona Supreme Court, has been authorized by Administrative Order No. 89–3 of the Chief Justice, to participate in the resolution of this case which was previously assigned to him as a judge of this Court or to his department before Thursday, January 5, 1989.

---

1. In paragraph 13 of the subcontracts, the parties agreed that if the amount due Totem under its general contract were reduced because of MAECO's default, then MAECO would reimburse Totem.