**BMW OF NORTH AMERICA, LLC, et al., Plaintiffs,**

v.

**MINI WORKS, LLC, et al., Defendants.**

**No. CV–07–1936–PHX–SMM**

United States District Court,
D. Arizona.

Signed March 8, 2010

Jay P. Rosenthal, Jones Skelton & Hochuli PLC, Phoenix, AZ, John Gilbert Froemming, Jessica D. Bradley, Howrey LLP, Washington, DC, Cory Leon Broadbent, Beus Gilbert PLLC, Scottsdale, AZ, for Plaintiffs.

David Geoffrey Bray, Mariscal Weeks McIntyre & Friedlander PA, Jay P. Rosenthal, Jones Skelton & Hochuli PLC, Phoenix, AZ, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

Stephen M. McNamee, United States District Judge.

Before the Court are Plaintiffs BMW of North America, LLC and Bayerische Motoren Werke AG's (collectively, "Plaintiffs") Motion for Summary Judgment (Dkt.91) and Defendant Mini Works, LLC's Motion for Partial Summary Judgment (Dkt.93) regarding the purported trademark settlement agreement between

Plaintiffs and Defendant. Although the parties requested oral argument, the Court finds it unnecessary in reaching a decision on summary judgment. For the reasons discussed below, the Court grants Plaintiffs' motion in part and denies Defendant's motion in its entirety.

## BACKGROUND

Plaintiffs own several United States trademark registrations of various MINI trademarks. (Dkt. 92, Pl.'s SOF ¶¶ 15–18.) Through their MINI division, Plaintiffs design, manufacture, distribute, service, and sell passenger cars throughout the world under their MINI trademarks. (Dkt. 88, Pl.'s Second Am. Compl. ¶ 3.) Plaintiffs also provide parts and accessories for passenger cars and offer promotional items, such as clothing, under their MINI trademarks. (Dkt. 92, Pl.'s SOF ¶¶ 17–18.) Defendant Mini Works, LLC, now known as Works Garage, LLC (hereinafter "Defendant"), caters exclusively to the sale, service, and restoration of preowned passenger cars bearing Plaintiffs' MINI trademarks. (Dkt. 88, Pl.'s Second Am. Compl. ¶ 3; Dkt.89, Def.'s Answer ¶ 4.) Defendant also sells parts for pre-owned passenger cars and accessories bearing Plaintiffs' MINI trademarks. (Dkt. 88, Pl.'s Second Am. Compl. ¶ 3.) Defendant provided these sales and services at its store located in Scottsdale, Arizona, under the mark and trade name Mini Works. (Id.) Plaintiffs allege that Defendant offered parts and accessories, including clothing items, using Plaintiffs' MINI trade name and trademark without their permission. (Id. at ¶ 21.)

Plaintiffs offered to refrain from filing a federal civil action if Defendant agreed in writing to cease and desist unauthorized uses of the mark MINI. (Id. at ¶ 25.) On February 16, 2007, Plaintiffs sent Defendant a cease and desist letter requesting, among other things, that Defendant eliminate "MINI" from its trade name and

domain name. (Id. at ¶ 23.) On February 28, 2007, Plaintiffs filed with the Trademark Trial and Appeal Board a Notice of Opposition against Defendant's application to register the mark Mini Works & Design based on the likelihood of confusion. (Id. at ¶ 24.)

On June 14, 2007, Plaintiffs sent Defendant a second cease and desist letter, which stated in part the following:

It is our client's hope that this matter can be amicably resolved and that it will have your cooperation in discontinuing use of BMW's trademarks. Specifically, BMW requests that you:

(1) Promptly drop "MINI" from your trade name and domain names;

(2) Cease and desist any and all other trademark use of MINI marks on your websites or elsewhere;

(3) Countersign and return the acknowledgment on page 4 of this letter, by June 21, 2007; and

(4) File an express abandonment of U.S. Trademark Application Serial No. 78/840,179 for MINI WORKS & Design by June 28, 2007.

If your company meets BMW's request to cease and desist, hen [sic] BMW will consider the matter closed and will not seek monetary or other relief regarding this matter from you or your company.

(Dkt.94, Ex. A.) On July 3, 2007, Linda Sharaby signed and returned the acknowledgment on behalf of Defendant. The acknowledgment stated as follows:

Without admitting liability and expressly denying the same, we acknowledge that we will: (1) promptly drop "MINI" from our trade name and domain names, (2) cease and desist any and all other trademark uses of BMW's MINI marks, or colorable imitations thereof, on our websites or elsewhere, and (3) file an express abandonment of U.S. Trademark

Application Serial No. 78/840,179 for MINI WORKS & Design, by June 28, 2007.

(Dkt. 92, Pl.'s SOF ¶ 2.) On October 24, 2007, Ms. Sharaby signed on behalf of Defendant the express abandonment of U.S. Trademark Application Serial No. 78/840,179. *(Id.* at ¶ 48.) The same day, Defendant communicated to Plaintiffs, "We are no longer operating under any domain name containing the word Mini, nor did we intend to purchase or operate any web domain with the word Mini in the future." (Id.) However, Plaintiffs allege that Defendant continued its unauthorized use of Plaintiffs' MINI trade name and trademarks. *(Id.* at ¶¶ 11–13, 19–24, 52–53.)

On October 10, 2007, Plaintiffs filed a Complaint against Defendants alleging six counts under federal and state law. (Dkt.1.) Plaintiff alleged three counts under the federal Lanham Act: (1) trademark infringement; (2) unfair competition, false designation of origin, and trade name infringement; and (3) violation of the Anticybersquatting Consumer Protection Act. Plaintiff alleged three counts under the common law of Arizona: (4) unfair competition; (5) trademark infringement, and (6) breach of contract. (Id.) On March 9, 2009, the Court permitted Plaintiffs to amend their complaint in order to add a seventh count for breach of the implied covenant of good faith and fair dealing under Arizona law. (Dkts.87, 88.)

On April 3, 2009, Plaintiffs filed a Motion for Summary Judgment to enforce the trademark settlement agreement with Defendants. (Dkt.91.) On the same day, Defendant filed a Motion for Partial Summary Judgment on Plaintiffs' contract claims. (Dkt.93.) Both motions address whether Ms. Sharaby's signed acknowledgment of July 3, 2007 is an enforceable contract. Plaintiffs responded to Defendant's motion on May 4, 2009. (Dkt.96.)

Defendant responded to Plaintiffs' motion and replied in support of its motion on May 15, 2009. (Dkt.102.) Plaintiffs then replied in support of their motion on June 1, 2009. (Dkt.106.) Accordingly, the matter is now fully briefed.

## STANDARD OF REVIEW

Upon motion, at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment in the party's favor as to ... any part thereof." Fed. R. Civ. P. 56(b). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Jesinger,* 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see Jesinger,* 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548; *see also Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex,* 477 U.S. at 317, 106 S.Ct. 2548. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995).

## DISCUSSION

The parties move for summary judgment regarding the enforceability of Ms. Sharaby's July 3, 2007, signed acknowledgment. Plaintiffs assert that Defendant entered into a binding settlement agreement to drop Plaintiffs' MINI mark from its trade name, domain names, and trademarks, yet it has failed to abide by the agreement by continuing to use MINI in virtually every manner prohibited by the agreement. (Dkt. 91, Pl.'s Mem. Supp. Summ. J. 2:6–11.) Thus, Plaintiffs argue that the Court should grant summary judgment in their favor on their breach of contract claim in order to enforce the agreement. (*Id.* at 2:1.) Alternatively, Plaintiffs assert that Defendant breached its implied duty of good faith and fair dealing. (*Id.* at 2:18–19.) About a week before Ms. Sharaby signed the acknowledgment, Plaintiffs allege that Mr. Victor Barreira secretly transferred Defendant's principal domain name, miniworks.com, to his father in Portugal. (*Id.* at 2:20–24.) As Mr. Barreira continues to "orchestrate" Defendant's operations and websites under the Mini Works trade name, Plaintiffs argue that the Court should enforce the settlement agreement because of Defendant's breach of the implied duty of good faith and fair dealing. (*Id.* at 2:24–28.)

Defendant contends that no enforceable agreement exists between it and Plaintiffs. (Dkt. 93, Def.'s Mot. for Summ. J. 2:19–22.) Defendant alleges that Plaintiffs' June 14, 2007 settlement offer expired nearly two weeks before it was "accepted" by Defendant. (*Id.*) The letter requested that Defendant countersign and return the acknowledgment by June 21, 2007 (Dkt.94, Ex. A.) However, Ms. Sharaby did not sign and return the acknowledgment on behalf of Defendant until July 3, 2007. (Dkt. 93, Def.'s Mot. for Summ. J. 2:19–22.) Because the offer had expired according to its own terms, Defendant argues it could not accept it; therefore, no enforceable contract arose between the parties. (*Id.*) As both of Plaintiffs' contract claims presuppose that a binding agreement existed between the parties, Defendant contends that both claims must fail. (*See* Dkt. 93, Def.'s Mot. for Summ. J.) Therefore, Defendant seeks summary judgment in its favor on Plaintiff's breach of contract and breach of the implied duty of good faith and fair dealing claims.

"Arizona's law has long favored compromise and settlement." *Emmons v. Superior Court,* 192 Ariz. 509, 512, 968 P.2d 582, 585 (Ct.App.1998) (citing *Phillips v. Musgrave,* 23 Ariz. 591, 594–95, 206 P. 164, 165 (1922)). "Construction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles." *Id.* (citing *Hisel v. Upchurch,* 797 F.Supp. 1509, 1517 (D.Ariz.1992)). "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K–Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n,* 139 Ariz. 209, 212, 677 P.2d 1317,

1320 (Ct.App.1983) (citing *Savoca Masonry Co., Inc. v. Homes & Son Constr. Co., Inc.,* 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975)). "[W]hen parties bind themselves by a lawful contract, a court must give effect to that contract as written if the terms are clear and unambiguous." *Mech. Air Eng'g Co. v. Totem Constr. Co.,* 166 Ariz. 191, 192–93, 801 P.2d 426, 427–28 (Ct.App.1989) (citing *Estes Co. v. Aztec Constr., Inc.,* 139 Ariz. 166, 168, 677 P.2d 939, 941 (Ct.App.1983)); *Shattuck v. Precision–Toyota, Inc.,* 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (1977) ("[T]he construction of a contract is a question for the court when its terms are plain and unambiguous on its face."). "Absent controlling Arizona law to the contrary, [Arizona courts] generally follow the Restatement, provided [they] deem it good legal authority." *Powers v. Taser Int'l, Inc.,* 217 Ariz. 398, 403, 174 P.3d 777, 782 (Ct.App.2007).[1]

## I.  BREACH OF CONTRACT

### A.  Offer and Acceptance

In this case, the parties dispute whether Defendant accepted Plaintiffs' offer, thereby creating an enforceable settlement agreement. According to the Restatement (Second) of Contracts, an offeror may specify the time, place, or manner of an offeree's acceptance. *See* Restatement (Second) of Contracts § 60 (1981). If an offer prescribes these terms, then the offeree must comply with them in order to create a contract. *Id.* "An offeree's power of acceptance is terminated at the time specified in the offer, or, if no time is specified, at the end of a reasonable time." Restatement (Second) of Contracts § 41. Thus, the offeror may dictate how an offeree accepts an offer.

However, "[i]f an offer merely *suggests* a permitted place, time or manner of acceptance, another method of acceptance is not precluded." Restatement (Second) of Contracts § 60 (emphasis added). "[C]are must always be taken in the interpretation of an offer to make sure whether the offer does in fact impose an absolute condition as to time, place, or manner of acceptance, or whether it merely suggests a method which will be satisfactory to the offeror." 2 Williston on Contracts § 6:12 (4th ed.2009) (citing Restatement (Second) of Contracts § 60 and illustrations). "[U]nless the offeror makes it clear, on a fair interpretation, that the offer may only be accepted in a particular manner or place, or at a particular time, the courts are likely to follow the Restatement, Second's directive that other methods of acceptance are permissible." *Id.* (citing Restatement (Second) of Contracts § 60 and illustrations).

Here, Plaintiffs' June 14, 2007, cease and desist letter requested that Defendant "[c]ountersign and return the acknowledgment on page 4 of this letter, by June 21, 2007." (Dkt.94, Ex. A.) The letter does not use any prescribing language, such as "you *must* return the acknowledgment by June 21, 2007," nor does it state that "time is of the essence." Rather, in the letter, Plaintiffs simply make "requests" of Defendant. (*Id.*) ("Specifically, BMW requests that you . . .") Moreover, the letter concludes with the phrase, "We look forward to your response by June 21." (*Id.*) Therefore, the letter appears to merely suggest, rather than demand, that Defendant return the acknowledgment within one week.

---

**1.** In the absence of a decision by the highest state court, the district court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *S.D. Myers, Inc. v. City and County of San Francisco,* 253 F.3d 461, 473 (9th Cir.2001).

Nonetheless, the Restatement (Second) of Contracts § 60's illustrations permit different methods of acceptance by the offeree so long as the acceptance occurs within the same time frame requested by the offeror, which indicates that the time of acceptance has significance. *See* Restatement (Second) of Contracts § 60 and illustrations. Moreover, "the Supreme Court has recognized the specification of a particular means for communicating an acceptance is, absent circumstances suggesting a different reason, most typically useful in enabling the offeror to determine the *time frame* within which the response is to be received." 2 Williston on Contracts § 6:12 (emphasis added). Therefore, the Restatement still places much emphasis on the timing of acceptance.

### B. Counteroffer

Even if Defendant signed and returned the acknowledgment two weeks late, "[a] late or otherwise defective acceptance may be effective as an offer to the original offeror." Restatement (Second) of Contracts § 70. In essence, "the noncomplying mode of acceptance ... operates as a counteroffer, which may thereafter be accepted by the original offeror." 2 Williston on Contracts § 6:12. Thus, even if the original offer prescribed the time of acceptance as a condition, and not merely a suggestion, the original offeror's manifested assent operates as acceptance of the offeree's counteroffer. *See id.* While it may seem like a waiver of the time requirements, in actuality, the original offeror is accepting the counteroffer. *See id.* Thus, the original offeror must manifest its assent, and its silence can operate as an acceptance in certain situations found in Section 69 of the Restatement. Restatement (Second) of Contracts § 70.

■ In this case, if time was a prescribed term, Defendant's late acceptance operated as a counteroffer. Therefore, the issue becomes whether Plaintiffs thereafter accepted the counteroffer. After receiving Defendant's signed acknowledgment dated July 3, 2007, Plaintiffs manifested their assent on July 23, 2007, by sending a form for Defendant to effectuate abandonment of its trademark application. (Dkt. 92, Pl.'s SOF ¶ 6.) Moreover, on August 29, 2007, Plaintiffs sent another letter to Defendant referencing the agreement and requesting compliance with it; otherwise Plaintiff would bring suit against Defendant. (*Id.* at ¶ 7.) Therefore, Plaintiffs twice confirmed their agreement.

■ Furthermore, while in most cases silence does not operate as acceptance, in this case Plaintiffs' non-action operated as acceptance. *See* Restatement (Second) of Contracts §§ 69 and 70. In exchange for Defendant's discontinued use of the trade name MINI, Plaintiffs agreed not to sue Defendant. Prior to the June 14, 2007 letter, Plaintiffs had sent another cease and desist letter. (Dkt. 88, Pl.'s Second Am. Compl. ¶ 23.) Plaintiffs did not send any more cease and desist letters, nor did they bring suit after Defendant's counteroffer, i.e. the signed acknowledgment by Ms. Sharaby. Therefore, Plaintiffs assented to Defendant's counteroffer by not pursuing any further legal action against Defendant. Only when Plaintiffs believed that Defendant breached the settlement agreement did Plaintiffs file this lawsuit.

### C. Ratification of a Contract; Performance

■ Finally, assuming that Defendant accepted Plaintiffs' offer later than requested, such that it operated as a counteroffer, and Plaintiffs did not manifest their assent to the counteroffer, Defendant is still bound by the agreement. "A person not bound by a contract may ratify the contract and thus become bound by its terms, by affirming the contract through

words or deeds." *All–Way Leasing, Inc. v. Kelly,* 182 Ariz. 213, 216, 895 P.2d 125, 128 (Ct.App.1994) (citing *Young Mines Co. v. Citizens' State Bank,* 37 Ariz. 521, 528–29, 296 P. 247, 250 (1931); Restatement (Second) of Contracts § 380 (1981); Restatement (Second) of Agency § 82 (1958)). Moreover, complete performance of a contract constitutes acceptance. *See Pratt–Gilbert Co. v. Renaud,* 25 Ariz. 79, 87, 213 P. 400, 403 (1923), *cited with approval by, Empire Mach. Co. v. Litton Bus. Tel. Sys., Div. of Litton Sys. Inc.,* 115 Ariz. 568, 572, 566 P.2d 1044, 1048 (Ct.App.1977).

■ In *Empire Machinery Co. v. Litton Business Telephone Systems,* an Arizona court discussed how an offeree can rely upon the manner of acceptance specified in a contract. 115 Ariz. at 572–73, 566 P.2d at 1048–49. If the offeror "waive[s]" the manner of acceptance, no contract is created unless the offeree assents. *Id.* at 572, 566 P.2d at 1048 (citing *Power Serv. Corp. v. Joslin,* 175 F.2d 698, 703 (9th Cir.1949)). The offeree may express assent by his conduct, in which case a binding contract arises. *Id.* at 572–73, 566 P.2d at 1048–49 (citing *Dunkel Oil Corp. v. Indep. Oil & Gas Co.,* 70 F.2d 967, 968–69 (7th Cir. 1934); 1 Corbin, *Contracts* § 88 (1963)). The offeree's conduct constituting assent under the circumstances "must be directed towards fulfilling the contractual obligation (that is, beginning performance) and that conduct must be conveyed by the offeree to the offeror." *Id.* at 573, 566 P.2d at 1049 (citing *Albright v. Stegeman Motorcar Co.,* 168 Wis. 557, 170 N.W. 951, 952 (1919)).

Here, when Ms. Sharaby signed and returned the acknowledgment, she understood that the dispute would be resolved. (Dkt. 92–5, Dep. of Linda Sharaby, 163:24, 164:4,20.) After that, on October 24, 2007, she signed on behalf of Defendant the express abandonment of U.S. Trademark Application Serial No. 78/840,179. (Dkt.

92, Pl.'s SOF ¶ 48.) That same day, Defendant communicated to Plaintiffs, "We are no longer operating under any domain name containing the word Mini, nor do we intend to purchase or operate any web domain with the word Mini in the future." (*Id.*) By affirming the contract through its words and actions, Defendant ratified the contract such that it became bound by the contract's terms. *See All–Way Leasing,* 182 Ariz. at 216, 895 P.2d at 128. As Defendant ratified and performed under the contract, Defendant cannot now assert that no contract existed. Indeed, in its previous Answer, Defendant continued to assert that it had "complied with all [of] Plaintiffs['] request." (Dkt.7.) Therefore, the Court determines as a matter of law that an enforceable agreement exists between the parties.

■ Questions of material fact remain over whether and to what extent Defendant breached the agreement. Plaintiffs allege that Defendant breached the settlement agreement in virtually every manner prohibited by it. (Dkt. 91, Pl.'s Mem. Supp. Summ. J. 2:7–8.) Plaintiffs allege that Defendant continued to use MINI in its trade name through at least November 2008 and that Defendant did not promptly drop MINI from its domain name. (Dkt. 92, Pl.'s SOF ¶¶ 11–13, 19–24, 52–53.) Additionally, Defendant allegedly continued to use the MINI trademark on its website to promote and sell "automobile goods and services, apparel, and other accessories." (*Id.* at ¶¶ 19–22, 24, 52.) Moreover, Defendant's President, Ms. Sharaby, admits that Mr. Barreira has continued to "orchestrate" business on a transatlantic scale under the Mini Works trade name, through the miniworks.com domain name and other websites. (Dkt. 91, Pl.'s Mem. Supp. Summ. J. 2:24–28.) Defendant disputes that it breached the settlement agreement, asserting that Mr. Barreira

"was *not* a member of Defendant." (Dkt. 102, Def.'s Resp. at 4:7.) As he is not a party to the agreement between Defendant and Plaintiffs, Defendant contends that he is not bound by its terms. (*Id.*) The parties have set forth sufficient facts showing that there is a genuine issue for trial. Because the Court finds as a matter of law that an enforceable settlement agreement exists between Plaintiffs and Defendant, the Court grants Plaintiffs' motion in part and denies Defendant's motion. Plaintiffs may pursue their breach of contract claim at trial.

## II. DUTY OF GOOD FAITH AND FAIR DEALING

■■■■ "In Arizona, a covenant of good faith and fair dealing is implied in every contract." *Maleki v. Desert Palms Prof'l Props., L.L.C.,* 222 Ariz. 327, 214 P.3d 415, 421 (Ct.App.2009) (citing *Bike Fashion Corp. v. Kramer,* 202 Ariz. 420, 423, 46 P.3d 431, 434 (Ct.App.2002)). "This is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'" *Id.* (quoting *Rawlings v. Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986)). "The duty arises by operation of law but exists by virtue of a contractual relationship." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002) (citing *Rawlings,* 151 Ariz. at 153–54, 726 P.2d at 569–70). "A party may breach the implied covenant even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement." *Nolan v. Starlight Pines Homeowners Ass'n,* 216 Ariz. 482, 489, 167 P.3d 1277, 1287 (Ct.App. 2007) (citing *Wells Fargo Bank,* 201 Ariz. at 491–92, 38 P.3d at 29–30). "Whether a party has breached the covenant of good faith and fair dealing is a question of fact."

*Maleki,* 214 P.3d at 421 (citing *Wells Fargo Bank,* 201 Ariz. at 493, 38 P.3d at 31). "The relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 385, 710 P.2d 1025, 1040 (1985).

Arizona courts follow the Restatement (Second) of Contracts § 205 (1981), which describes the duty of good faith and fair dealing in contract:

[B]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Airfreight Exp. Ltd. v. Evergreen Air Ctr., Inc.,* 215 Ariz. 103, 111, 158 P.3d 232, 241 (Ct.App.2007) (alteration in original).

Under the settlement agreement, Defendant agreed to drop MINI from its trade name and domain names, cease and desist any and all other trademark uses of Plaintiffs' MINI mark, and file express abandonment of the U.S. Trademark Application. (Dkt.94, Ex. A.) Defendant had also claimed to Plaintiffs in October 2007 that "[w]e are no longer operating under any domain name containing the word Mini." (Dkt. 92, Pl.'s SOF. ¶¶ 1–5, ¶ 48.)

### A. Plaintiffs' Reasonably Expected Benefits under the Agreement

■■■ In this case, Plaintiffs argue that Defendant breached its implied covenant of good faith and fair dealing by continuously using MINI in a manner that inhibited Plaintiffs' trademark and trade name,

thus impairing Plaintiffs' right to receive the benefit flowing from their settlement agreement. (Dkt. 91, Pl.'s Mem. Supp. Summ. J. 12:12–13.) Although Defendant's Manager, Mr. Barreira, transferred the company's infringing domain site (www.miniworks.com) to his father in Portugal, Plaintiffs contend that his continuing access and control over the website in Arizona deprives Plaintiffs of the reasonable benefits they intended to receive under the agreement. (*Id.*)

In an effort to uphold the secondary meaning associated with the quality and service of its Mini Cooper, Plaintiffs intended that all use of the domain name miniworks.com would cease. (Dkt. 88, Pl.'s Second Amended Compl. at ¶ 20, 40). Plaintiffs allege the website, accessible by the public to purchase goods, still references the trade name MINI. (Dkt. 92, Pl.'s SOF ¶¶ 19–24, 52–53.) By transferring the website to another user, and still maintaining the website in Arizona, Defendant is not upholding Plaintiffs' alleged intended purpose of the contract, which was to terminate all unauthorized use of the trade name MINI.

Plaintiffs allege that Defendant's termination of all uses of the trade name MINI is a reasonably expected benefit under the settlement agreement; however, what is deemed reasonable and whether Plaintiffs were denied reasonably expected benefits under the agreement are questions of fact. *See Maleki*, 214 P.3d at 421. Thus, the Court cannot find as a matter of law that Plaintiffs were denied reasonable benefits under the contract, and Plaintiff must proceed to trial on this matter.

## B. Corporation's Liability for an Employee's Acts Causing a Breach of Implied Duty of Good Faith and Fair Dealing

While Defendant claims to no longer use the miniworks.com domain name, Plaintiff alleges it violated the implied duty of good faith and fair dealing because one of its employees, Mr. Barreira, transferred the domain name to another but maintained administrative control. It is undisputed that Defendant's Founder and current Manager is Mr. Barreira. (Dkt. 92–10, Barriera's Dep. 8:19–25.) Mr. Barreira's duties include managing Defendant's domain name and website. (Dkt. 92–5, Sharaby Dep. 152.) Mr. Barreira is listed on Defendant's website as one of the company's two partners. (Dkt. 92–7 at 2.) Furthermore, as an acting manager, Mr. Barreira suggested to President Sharaby that she not sign the cease and desist letter. (Dkt. 9211, Victor Barreira Dep. 249.)

Defendant argues that Mr. Barreira was the original owner of the domain name; therefore it is not liable for trade name infringement. (Dkt.102, Def.Resp.13–15.) Also, Defendant claims that Mr. Barreira, as an unnamed party or non-signatory to the settlement agreement, was not bound by it. (*Id.*) Thus, Mr. Barreira cannot be tied to the settlement agreement because he did not "sign, authorize, or condone" it. (*Id.*)

If Mr. Barreira is an employee of Defendant, then it is irrelevant that he did not sign the settlement agreement between Plaintiffs and Defendant. "[A] corporation can act only through its employees."[2] *Custom Roofing Co., Inc. v. Alling*, 146 Ariz. 388, 390, 706 P.2d 400, 402 (Ct. App.1985). Thus, when a defendant's em-

---

**2.** The Arizona Supreme Court found the concept that a "corporation acts only through its agents" to be an "elementary" principle, such that "no citations are necessary to support [this] fundamental principl[e] of law." *Lois Grunow v. Mem'l Clinic v. Davis*, 49 Ariz. 277, 285, 66 P.2d 238, 241 (1937).

ployee causes a breach of contract, a plaintiff can hold the defendant corporation liable for breach of contract without having to bring a separate claim against that employee for inducing the breach. *See id.* Because a corporation can act only through its employees, a defendant corporation should also be liable for its employee's actions causing a breach of the implied duty of good faith and fair dealing. *See id.* Defendant argues it is not liable because Mr. Barreira has always remained the individual owner of the domain name, and Mr. Barreira merely granted Defendant use of the domain name in 2005. However, from the admitted duties Mr. Barreira possesses as Defendant's Manager, he most likely acts within the capacity of his employment every time he accesses and controls the website. Mr. Barreira's duties involve controlling Defendant's website, thus Defendant is directly implicated because it is his employer. Additionally, Plaintiffs addressed the letter to Mr. Barreira, and he advised President Sharaby not to sign the letter; therefore, he had knowledge of its contents and was fully aware of his need to terminate Defendant's use of the website.

Mr. Barreira appears to be an active leader in the business operations of Defendant, and he has significant authority over the marketing strategies of Defendant, particularly through the website forum. Mr. Barreira, as an agent of Defendant, has continued to "orchestrate" Defendant's websites in Arizona (Dkt. 92, Pl.'s SOF ¶ 53), which may be a violation of the implied duty good faith and fair dealing. As Plaintiffs have set forth sufficient facts for their breach of implied duty of good faith and fair dealing claim, Defendant's motion for summary judgment is denied.

## CONCLUSION

Plaintiffs' motion for summary judgement is granted in part as to the existence of a valid, enforceable settlement agreement. Plaintiffs must prove their breach of contract claim at trial. Plaintiffs have sufficiently set forth their breach of implied duty of good faith and fair dealing claim, but Plaintiffs must also prove that claim at trial because a question of material fact exists as to whether Defendant denied Plaintiffs their reasonable benefits under the agreement. For the same reasons, Defendant's motion is denied in its entirety.

In light of the above,

**IT IS HEREBY ORDERED** that Plaintiffs BMW of North America, LLC and Bayerische Motoren Werke AG's Motion for Summary Judgment (Dkt.91) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant Mini Works, LLC's Motion for Partial Summary Judgment (Dkt.93) is **DENIED**.

**IT IS FURTHER ORDERED** that the attorneys for each party who will be responsible for trial of the lawsuit shall appear and participate in a **Final Pretrial Conference on Monday, May 3, 2010 at 1:30 p.m.** in courtroom 605 on the sixth floor of the United States Courthouse, 401 W. Washington St., Phoenix, Arizona. Because the Final Pretrial Conference is held for the benefit of all parties, and further because the presence of all parties will facilitate frank discussion of the pertinent issues in the lawsuit, each party, or a representative with binding settlement authority if the party is an entity, shall attend the Final Pretrial Conference. At the Final Pretrial Conference, the Court shall set a firm trial date.