NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NARESH MAGO, et al.,
*Plaintiffs/Appellees/Cross-Appellants.*

*v.*

ARIZONA ESCROW & FINANCIAL CORPORATION,
*Defendant/Appellant/Cross-Appellee.*

No. 1 CA-CV 22-0270
FILED 3-30-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2017-094803
The Honorable Stephen M. Hopkins, Judge, *Retired*

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

---

COUNSEL

Jaburg & Wilk, P.C., Phoenix
By Roger L. Cohen, Kathi Mann Sandweiss
*Counsel for Defendant/Appellant/Cross-Appellee*

Bueler Jones, LLP, Chandler
By Gordon S. Bueler
*Counsel for Plaintiffs/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge Randall M. Howe joined.

---

**W I L L I A M S**, Judge:

¶1        Arizona Escrow & Financial Corp. ("Arizona Escrow") appeals the jury verdict for Naresh Mago. Mago cross-appeals the superior court's remittitur of the jury's award. We affirm in part, and reverse and remand in part.

## FACTUAL AND PROCEDURAL HISTORY

¶2        As stated in *Mago v. Arizona Escrow & Financial Corp.*, 1 CA-CV 19-0753, 2021 WL 829259 (Ariz. App. March 4, 2021) (mem. decision), Mago contracted with Don and Judy Fulghum ("Sellers") to purchase a Subway restaurant franchise. Arizona Escrow acted as the escrow agent for the transaction. The purchase agreement set forth escrow instructions and included Mago's and the Sellers' contact information.

¶3        Mago deposited a portion of the purchase price with Arizona Escrow. After opening the escrow account, an imposter hacked Mago's email account. After the hack, the imposter created an email address that matched the Sellers' email address except for an inconspicuous "rn" where the Sellers' correct email address had an "m." The night before the release of the funds, the imposter and Mago emailed each other, discussing the purchase without including Arizona Escrow in the email chain.

¶4        The next morning, the imposter emailed wiring instructions to Arizona Escrow, copying Mago on the email. Neither Mago nor Arizona Escrow noticed the slightly different email address used by the imposter. In response, Mago emailed Arizona Escrow instructing them to release $79,000 from the escrow account. Noting that the name on the bank account provided in the email was different than the Sellers' name or any other entity related to the transaction, Arizona Escrow responded to Mago and the imposter questioning the wiring instructions. The imposter replied to Arizona Escrow and Mago, "yes, that is the name on the account I want the money to be wired. Its [sic] our company account and you can send in the wire there." Arizona Escrow then emailed Mago asking for clarification on

the amount to be wired. Again, Mago confirmed the amount to be wired and that Arizona Escrow should release the funds. Without phoning the Sellers to verify the wiring information, Arizona Escrow released the funds and emailed confirmation of the wire transfer to Mago and the imposter later that day. Because the Sellers never received the funds, the sale did not go through. The funds were never recovered.

¶5 Mago sued Arizona Escrow alleging negligence, breach of fiduciary duty, and breach of contract. Arizona Escrow successfully moved for summary judgment on the breach of contract claim, and the remaining two claims were tried by a jury.

¶6 At trial, Mago testified about the transaction and that he anticipated the Subway restaurant making $100,000 in profits annually. But the superior court ruled that the claim for lost profits lacked sufficient evidence to go to the jury. The jury also heard, among other things, expert testimony regarding an escrow agent's duty to detect fraud and verify the recipient of escrow funds.

¶7 The court instructed the jury on apportionment of fault and directed the jury to determine "the relative degrees of fault" as percentages for Mago, Arizona Escrow, and the imposter. The jury apportioned one hundred percent of the fault to Arizona Escrow and awarded Mago $379,000 in damages.

¶8 Arizona Escrow moved for a new trial contending the jury failed to follow the court's instructions by apportioning no fault to the imposter. The superior court denied the motion. Arizona Escrow also asked the court to reduce Mago's jury award. The court obliged, reducing the award from $379,000 to $79,000 stating that "the only evidence that [the jury] could use [for damages] was the $79,000." The court awarded Mago prejudgment interest on the $79,000 award, along with Mago's attorney's fees and costs under A.R.S. § 12-341.01.

¶9 Arizona Escrow timely appealed. Mago cross-appealed the court's remittitur. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -2101(A)

## DISCUSSION

¶10 Arizona Escrow appeals the jury's verdict, contending: (1) apportioning one hundred percent of fault to Arizona Escrow violated A.R.S. § 12-2506, and that Mago was not eligible for (2) prejudgment interest

or (3) attorney's fees. Mago counters that the court had insufficient evidence to reduce the jury's award from $379,000 to $79,000.

### I. Allocation of Fault

**¶11** Arizona's Uniform Contribution Among Tortfeasors Act requires juries to "consider the fault of all persons who contributed to [an] alleged injury . . . regardless of whether the person was, or could have been, named as a party to the suit." A.R.S. § 12-2506(B). Arizona Escrow argues the jury was "required to assess some fault against [the imposter], whose fault is undisputed."

**¶12** When interpreting statutes, our goal is to determine and effectuate the legislature's intent, *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 164, ¶ 20 (2017), and a statute's plain language is the most reliable indicator of legislative intent, *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9 (2004).

**¶13** The interpretation urged by Arizona Escrow fails under the statute's plain language. Section 12-2506(B) requires only that a jury *consider* fault; it does not obligate a jury to assign a percentage of fault to every person it considers.

**¶14** To be sure, A.R.S. § 12-2506(B) only required the jury "to consider the fault of all persons who contributed to the alleged injury," not to apportion fault to any one source. "[T]he jury is the sole arbiter of fact and law as to the defenses of contributory and comparative negligence." *Gunnell v. Ariz. Pub. Serv. Co.*, 202 Ariz. 388, 394, ¶ 23 (2002). The superior court instructed the jury to consider the fault of Mago, Arizona Escrow, and the imposter. And the verdict form clearly allowed for an allocation of fault to any or all three.

**¶15** Arizona Escrow looks past the statute's plain language and relies on *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 36, ¶¶ 16–17 (App. 2001). But unlike the parties in *Ogden*, the parties never stipulated liability here. Because Arizona Escrow has shown no error, the superior court did not abuse its discretion in denying Arizona Escrow's motion for a new trial.

### II. Prejudgment Interest

**¶16** Arizona Escrow also challenges the superior court's award of prejudgment interest to Mago from the date the escrow account closed. Whether a party is entitled to prejudgment interest is a question of law we

review de novo. *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 544, ¶ 39 (App. 2004).

**¶17** Courts award prejudgment interest on liquidated claims as a matter of right. *Alta Vista Plaza, Ltd. v. Insulation Specialists Co., Inc.*, 186 Ariz. 81, 82 (App. 1995). "A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Marcus v. Fox*, 150 Ariz. 342, 345 (App. 1985), *vacated in part*, 150 Ariz. 333 (1986). Courts award prejudgment interest to "recompens[ate] the victim and deter[] defendants from dilatory litigation tactics." *Dawson v. Withycombe*, 216 Ariz. 84, 113, ¶ 99 (App. 2007).

**¶18** Arizona Escrow contends that Mago's claim was never liquidated because Mago sought consequential damages, like lost profits, which are valued based on opinion. *See Custom Roofing Co., Inc. v. Alling*, 146 Ariz. 388, 391 (App. 1985). Even if the claims for consequential damages were not eligible for prejudgment interest, however, that still leaves liquidated damages of $79,000, which neither party disputed. *See Alta Vista*, 186 Ariz. at 84 (noting that different damages within a claim could become liquidated at different times depending on when the plaintiff provided sufficient information to calculate the loss).

**¶19** As to when the interest began to accrue, the superior court relied on *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508–09 (1996), in which our supreme court stated, "[a]s a general rule, the trial judge should calculate prejudgment interest from the date the claim becomes due" except for cases, "involving unconditional money debts" where "prejudgment interest accrues from the date the plaintiff makes a demand." We cannot say the superior court erred in awarding prejudgment interest from the date the escrow account closed.

   III.   *Award of Attorney's Fees*

      A. *Eligibility for Attorney's Fees under A.R.S. § 12-341.01*

**¶20** Arizona Escrow next challenges Mago's award of attorney's fees, claiming that the provisions of A.R.S. § 12-341.01 are no longer applicable to this case because Arizona Escrow prevailed on Mago's breach of contract claim at summary judgment. *Mago v. Arizona Escrow & Financial Corp.*, 1 CA-CV 19-0753, 2021 WL 829259, at *2, ¶¶ 10, 11. We review eligibility for a statutory award of attorney's fees de novo. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 26, ¶ 24 (App. 2006).

**¶21** Section 12-341.01 provides for an award of reasonable attorney's fees "[i]n any contested action *arising out of a contract*." (Emphasis added). It does not require a breach of contract action; even a tort claim may do. *Barmat v. John & Jane Does Partners A-D*, 155 Ariz. 519, 522 (1987). A tort arises out of contract when "the duty breached is not imposed by law, but is a duty created by a contractual relationship, and would not exist 'but for' the contract." *Id.* at 523. The relevant test then is whether the tortfeasor "would have a duty of care . . . even in the absence of a contract." *Ramsey Air Meds, L.L.C. v. Air Cutter Aviation, Inc.*, 198 Ariz. 10, 15, ¶ 27 (App. 2000).

**¶22** Unlike "attorneys, accountants, and other professionals [who] owe special duties to their clients . . . even if the client . . . expressly declined the professional's services," *Barmat*, 155 Ariz. at 523, escrow agents generally owe no duty to those with whom there is no contract. *Compare Luce v. State Title Agency, Inc*, 190 Ariz. 500, 502 (App. 1997), *with Ramsey*, 198 Ariz. at 16, ¶ 28 ("The pilot of an aircraft owes a legal duty of care to many people . . . this duty is based not on contract, but on tort law."), *and Dooley v. O'Brien*, 226 Ariz. 149, 154, ¶¶ 18–19 (App. 2010) (concluding that fiduciary obligations by corporate directors can apply without "regard to the terms in the underlying contracts").

**¶23** Arizona Escrow would not have owed a duty to act towards Mago with "scrupulous honesty, skill, and diligence," *Berry v. McLeod*, 124 Ariz. 346, 351 (1979), absent Mago's contract. For that reason, Arizona Escrow's duty to Mago arose out of contract making Mago eligible for an award of attorney's fees under A.R.S. § 12-341.01. The superior court did not err in awarding Mago attorney's fees.[1]

### B. Reasonableness of Attorney's Fee Award

**¶24** Even if proper, Arizona Escrow contends the fee award was unreasonable because it included fees spent defending the breach of contract claim. We review the amount of a fee award for an abuse of

---

[1] We note that the superior court based its conclusion on our supreme court's opinion in *Burkons v. Ticor Title Insurance Co. of California*, 168 Ariz. 345 (1991) for the proposition that A.R.S. § 12-341.01 "expressly allows recovery against an escrow company based upon breach of fiduciary duty." But this principle comes from this court's opinion in *Burkons v. Ticor Title Insurance Co. of California*, 165 Ariz. 299, 312 (App. 1989), which was vacated on review.

discretion. *Lee v. ING Investment Management, LLC*, 240 Ariz. 158, 161 ¶ 11 (App. 2016).

**¶25**        The superior court reasoned that the breach of contract claim was factually connected with the other claims, and that it would be difficult to determine which fees are associated with which claims. Courts can award attorney fees spent pursuing unsuccessful claims when intertwined with successful claims as the superior court did here. *See Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 189 (App. 1983) ("[W]here a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories."). Arizona Escrow contends that the fee award should be reduced by one third because one of Mago's three claims was dismissed. But Arizona Escrow provides no persuasive authority for its position.

**¶26**        However, we agree with Arizona Escrow that the superior court's total award does not reflect the fee calculation provided by Mago's counsel. Counsel's affidavit requests $66,750, but the court entered an award for $67,750. Because no factual basis exists in the record for the increase, we remand to the superior court to enter an award of $66,750.

*IV.    Remittitur*

**¶27**        Mago cross-appeals the superior court's remittitur of the jury verdict from $379,000 to $79,000. We give the "greatest possible discretion [to] the trial court with respect to the alteration of the verdict" and will only reverse if the court abuses that discretion. *Mammo v. State*, 138 Ariz. 528, 533–34 (App. 1983).

**¶28**        Our supreme court has urged superior courts to "sparingly exercise discretion in modifying a jury's verdict," while also recognizing that courts play "a role akin to a thirteenth juror." *Soto v. Sacco*, 242 Ariz. 474, 478, ¶ 8 (2017). A court may exercise its discretion in cases where the verdict "reflects an exaggerated measurement of damages." *Id.* at ¶ 9 (citations omitted).

**¶29**        Mago contends the jury's verdict could legitimately include the "lost time value" of the $79,000, lost opportunities, and the "tens of thousands of dollars [spent] trying to get [his] money back." But Mago never presented any evidence at trial of lost opportunities or efforts to get his money back. Mago did testify about his projected profits from the Subway restaurant, but that claim was not submitted to the jury as a matter of law.

¶30        Mago persists that the jurors used their "common sense" and "experience" to find an amount which would "reasonably and fairly compensate" him. But the jury must have some evidence on which it bases its verdict. Mago points to none, and we cannot find any that justifies the jury's decision to award $300,000 above the $79,000 lost in the escrow transaction. On this record, the superior court's remittitur was not error.

V.        *Attorney's Fees on Appeal*

¶31        Mago requests reasonable attorney's fees and costs on appeal under A.R.S. § 12-341.01. Because he is the prevailing party, in our discretion, we grant the request upon compliance with Arizona Rule of Appellate Procedure 21.

## CONCLUSION

¶32        We affirm the superior court's rulings with the sole exception of the amount of attorney's fees awarded to Mago. On that matter, we remand to allow the court to issue an order consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8